No. 15,567.

FRANKEL CARBON AND RIBBON COMPANY ET AL. *v.* AARON.

(158 P. [2d] 929)

Decided April 9, 1945. Rehearing denied May 14, 1945.

Mr. Louis Schiff, Mr. Alious Rockett, Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Barbara Lee, Assistant, for plaintiffs in error.

Mr. Myron H. Burnett, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

This is a workmen's compensation case involving for the first time a construction of chapter 243, Session Laws 1941. The case arises out of the death by accident of William Aaron, who was employed on a commission basis as a representative of the Frankel Carbon & Ribbon Company. His contract of employment, entered into in Denver in 1930, as a traveling salesman, included the states of Wyoming, Utah, Washington and Oregon. The evidence showed that he made two trips over his territory each year and spent about six weeks between trips in Denver, which was his home. While in Denver he helped to train other salesmen and made some sales in Colorado, receiving commissions on account of such sales, but nothing for helping to train other salesmen. The accident, which arose out of and in the course of his employment, occurred in the state of Washington, where his employer maintained no place of business and had no other employees. Employer carried no compensation insurance in any state other than Colorado. Claimant dependents were awarded compensation by a referee of the Industrial Commission. On review, the commission vacated the award and denied the claim. Claimants then brought suit in the district court, which rendered judgment, "in favor of plain-

tiffs \* \* \* and that the award of the Industrial Commission, heretofore entered, be vacated." The employer, the commission and the state fund thereupon brought the case here on writ of error.

 The provisions of chapter 243, Session Laws 1941, omitting the safety and emergency clauses, are:

"An act concerning workmen's compensation and exempting certain persons subject to workmen's compensation laws of other states from the provisions of the workmen's compensation act of Colorado.

"Section 1. Any employee who has been hired outside of this state, and his employer, shall be exempted from the provisions of the Workmen's Compensation Act of Colorado while such employee is temporarily within this state doing work for his employer if such employer has furnished workmen's compensation insurance coverage under the workmen's compensation or similar laws of a state other than Colorado, so as to cover such employee's employment while in this state; provided the extra-territorial provisions of this Act are recognized in such other state and provided employers and employees who are covered in this state are likewise exempted from the application of the workmen's compensation or similar laws of such other state. The benefits under the Workmen's Compensation Act or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this state.

"Section 2. A certificate from the duly authorized officer of the Industrial Commission or similar department of another state certifying that the employer of such other state is insured therein and has provided extra-territorial coverage insuring his employees while working within this state shall be prima facie evidence that such employer carries compensation insurance.

"Section 3. If an employee who has been hired or is regularly employed in this state receives personal injury

by accident arising out of and in the course of such employment outside of this state he, or his dependents in case of his death, shall be entitled to compensation according to the law of this state. This provision shall apply only to those injuries received by the employee within six months after leaving this state, unless prior to the expiration of such six months period the employer has filed with the Industrial Commission of Colorado notice that he has elected to extend such coverage a greater period of time.

"Section 4. As used in this Act, the term 'state' shall be construed to include any state or territory of the United States, the District of Columbia, and any province of Canada.

"Section 5. This Act shall be known and be deemed to be and become a part of the Workmen's Compensation Act of Colorado."

It is stipulated that the state of Washington has no law recognizing the extraterritorial provisions of the Colorado act in question.

The Industrial Commission, in setting aside the award of its referee, made the following findings:

"William Aaron was employed by the above named respondent employer as a traveling salesman at an average weekly wage of $80.00. On November 28, 1942, while engaged in the performance of his duties for the above named respondent employer, William Aaron was involved in an automobile collision while driving between the cities of Yakima and Spokane in the State of Washington. He suffered injuries from which he died that same day. He left surviving and wholly dependent upon him for support his widow, Sarah Aaron, and a minor daughter, Maxine Aaron, born November 2, 1930. * * *

"Respondents further contend that this Commission does not have jurisdiction to determine this case since the accident occurred in the State of Washington and decedent did not perform a substantial portion of his

work in the State of Colorado. The contract of hire between decedent and respondent employer was made in the State of Colorado but the Commission finds that no substantial portion of the services of the decedent were rendered in the State of Colorado.

"In the case of *United States Fidelity and Guaranty Company vs. Industrial Commission,* 99 Colo. 280, our Supreme Court reviewed all of its prior decisions pertaining to the Extraterritorial Coverage of the Colorado Compensation Act and defined the limitations of the Commission's jurisdiction at page 284 as follows: 'It thus appears that to justify recovery under our law the one essential element is that a substantial portion of the work must be done in this State, but that with this must be combined either an accident in Colorado or a contract in Colorado.'

"Since decedent did not perform a substantial portion of his work within this State, this case does not come within the rule laid down by the above case and this Commission has no jurisdiction unless jurisdiction is given in such a situation by Section 3 of Chapter 243, 1941 Colorado Session Laws. Section 1 of this Act applies only in situations where another State has a Compensation Act reciprocal to the Colorado Act, that is if an employee is hired in another State and is temporarily doing work within this State, the benefits under the Compensation Act of the other State shall be the exclusive remedy against the employer in case of injury even though the accident occurs in the State of Colorado provided the extraterritorial provisions of this Act are recognized in such other State and provided employers and employees who are covered in this State are likewise exempt from the application of the Workmen's Compensation Act of the other State.

"If Section 3 were not added to this Act the only extraterritorial coverage we would have would be in accordance with the rule laid down in the United States Fidelity case.

"The Commission finds that the Legislature wanted to extend our extraterritorial coverage in cases where we are dealing with States' with a reciprocal law and, therefore, passed Section 3. It was not the intent of the Legislature to extend extraterritorial coverage in all cases. Section 3 and Section 1 are both contained in the same Act and come under the same title, 'Concerning Workmen's Compensation and exempting certain persons subject to Workmen's Compensation Laws of other States from the provisions of the Workmen's Compensation Act of Colorado.'

"The Commission finds that the Compensation Act of the State of Washington does not contain the provisions in accordance with the qualifying language of reciprocity contained in said Section 1. Therefore, this case is not covered by said Section 3 but comes under the rule as laid down in the United States Fidelity case and this Commission, therefore, does not have jurisdiction over this accident and this case for death benefits should be denied.

"It is, therefore, ordered: That the Referee's order of April 13, 1944 be and the same is hereby vacated.

"It is further ordered: That this claim for death benefits be and the same is hereby denied."

A study of the act shows that section 1 deals with the case of a person whose employee relationship has originated in another state, and whose employment brings him temporarily within the borders of Colorado. In such a situation the Colorado compensation act does not apply if the employer has furnished workmen's compensation in another state so as to cover the employment in Colorado. But this arrangement is not permissible unless two conditions attach, i.e.: (1) the extraterritorial provisions of the Colorado act (not merely section 1) must be recognized in the other state where the insurance is issued, and (2) employers and employees who are covered in Colorado must be likewise exempted

from the application of the workmen's compensation law of the other state.

The term "extraterritorial provisions" would seem to mean Colorado's recognition of coverage arising in a state other than Colorado, for in section 2 there is the provision that the certificate from the industrial commission of another state certifying that the employer of such other state is insured therein and has provided "extraterritorial coverage insuring his employees while working within this state, shall be prima facie evidence that such employer carries compensation insurance." Section 2, therefore, relates to the first condition in section 1 and makes it effective, complete and operative. Likewise, it would appear that section 3 relates to the second condition in section 1 and makes it possible, by virtue of that second condition, for employees in Colorado, who are properly insured therein, to work temporarily in another state without being subjected to the compensation laws of that other state. To state it another way, section 3 gives an employee going outside of this state the right to remain protected by the Colorado insurance coverage, *subject, however,* to the second condition in section 1, and if that condition does not exist the *whole act* becomes inoperative—which includes section 3 as well as section 1. So interpreted, the three sections of the act make a balanced and coherent law which comes into play only when there is a reciprocal law in another state to bring it to life and give it force and effect. If no other state enacts a reciprocal law, there is no area upon which this Colorado law can operate.

Counsel for claimant argues that section 3 is complete in itself and unrelated to the other paragraphs in this act; that, standing alone, it has no conditions attached, other than the six months non-resident provision; that therefore it must be construed as being pertinent to every situation where a Colorado employee becomes temporarily nonresident, regardless of whether

or not the new state where he becomes temporarily resident has a reciprocal law recognizing extraterritoriality; that section 3 must be given full effect, if put to the test in other states, under the full faith and credit provision of the United States Constitution (Article IV, section 1) as set forth in *Bradford Electric Light Co. v. Clapper,* 286 U. S. 145, 52 Sup. Ct. 571, 76 L. Ed. 1026, 82 A.L.R. 696; *Alaska Packers Ass'n v. Industrial Accident Commission,* 294 U. S. 532, 55 Sup. Ct. 518, 79 L. Ed. 1044; *Cole v. Industrial Commission,* 353 Ill. 415, 187 N. E. 520, 90 A.L.R. 116; *Magnolia Petroleum Co. v. Hunt,* 320 U. S. 430, 64 Sup. Ct. 208, 88 L. Ed. 149, 150 A.L.R. 413.

This argument would seem not to be germane for two reasons. The first one is that no other state is now assuming to exercise jurisdiction in this case; and secondly, even if it were, it would seem that this act did not contemplate the invoking of the full faith and credit clause of the federal Constitution. Section 4 defines the word "state" as including not only the states and territories and District of Columbia that are a part of our federal government, but also "any province of Canada." It is quite apparent that the full faith and credit clause of the United States Constitution is not applicable to "any province of Canada." The interpretation urged by defendant in error could at best make section 3 effective in only a part of the territory contemplated by this act.

It would seem that the very inclusion of "any province of Canada" within the purview of this act argues convincingly that the basic principle of the act is the mutual recognition of extraterritorial provisions by voluntary reciprocal action of the various governing units contemplated by this act; that the extraterritorial principle becomes applicable only to the extent that one state and then another enacts a similar reciprocal law. The fact that two neighboring states, Utah and Wyoming, have enacted simultaneously with this state very similar laws would seem to be persuasive in adopting this view.

The Wyoming act, like that of Colorado, became law in 1941. Its title reads as follows: "An Act extending the benefits of the Workmen's Compensation Law to employees injured while temporarily without the State and exempting, in certain cases, from the provisions of the Act employers and employees temporarily engaged in work within the State." The body of the act contains the same provisions as the first three sections of our Colorado law: Section 1 of the Wyoming act corresponds to section 3 of the Colorado act; section 2 of the Wyoming act to section 1 of the Colorado act; and section 3 of the Wyoming act to section 2 of the Colorado act. We have found no cases in the reports construing the Wyoming act.

The history of the Utah act is somewhat different. In 1917 that state enacted as section 42-1-52 what corresponds to section 3 of the Colorado act. In 1941 Utah added *as an amendment* and not by separate enactment, its section 2 which combined the same provisions as are set forth separately in sections 1 and 2 of the Colorado act. The title of the Utah Act of 1941 reads: "An Act amending Section 42-1-52, Revised Statutes of Utah, 1933, and Enacting a New Section to be known as Section 42-1-52A, Relating to Industrial Commission and Workmen's Compensation." The Supreme Court of Utah has rendered three recent decisions which involve in various ways the question of extraterritoriality of its Workmen's Compensation Act. In *Fay v. Industrial Commission,* 100 Utah 542, 114 P. (2d) 508, it laid down the proposition that its workmen's compensation act is intended to be operative by virtue of the status of employer and employee and not on the theory of contract, express or implied, between employer and employee; that the place where the contract is made is not controlling; that the dominant consideration is whether the employee had attained the status of an employee in that state.

In *Buhler v. Maddison,* 105 Utah 39, 140 P. (2d) 933,

a case that involved the effect of section 42-1-52 of the Utah Code of 1943, being the equivalent of section 3 of the Colorado act, it was held that where the employee performed no services for employer in Utah, nor was it contemplated that he should be employed in Utah, the contract of hire was not made in Utah, and all services were performed in Nevada, that the employee could not recover for injuries under the Utah Compensation Act.

And finally, in *United Air Lines Transport Corp. v. Industrial Commission* (Utah), 151 P. (2d) 591, a case arising under section 42-1-52A of the Utah Code, which is equivalent to section 1 of the Colorado act, it was held that where the record of compensation in a case disclosed that California had compensation laws which protected California employees of the Air Lines Corporation while temporarily in Utah, and uncontradicted affidavits disclosed that employer had issued compensation policies in favor of air line covering the death or injury suffered by employees, whether suffered in California or elsewhere, and that extraterritorial provisions of the Utah Compensation Law were recognized in California, and under presumption that California exemption and reciprocity provisions were the same as those of Utah, air line and employee are exempt from Utah law and exclusive remedy for employee's death in Utah lay in California.

It will be noted that in the latter case the principle of reciprocity was recognized, and the two earlier cases do not conflict with the position we take in the instant case.

The history of the Colorado act shows that it was originally introduced in the 1941 legislature as Senate Bill No. 193 in its present form; that it was not amended in any manner on its passage through the General Assembly, and a comparison of the bill, as introduced, with the act, as adopted, shows that the two are identical.

Section 4, therefore, by its definition of "state," implies that its extraterritorial provisions are premised on

reciprocal legislation of other states. We have already seen that sections 1 and 2 imply a similar reciprocity. Section 5 provides that the "act," as a whole and not merely section 3, shall be a part of the workmen's compensation law.

Counsel for claimants is therefore forced into the position of arguing that section 3, the middle section of the act, must be interpreted as if it stood alone and did not rest on reciprocal legislation "outside of this state" to make it effective, when the surrounding sections of the act speak otherwise. This would seem to be a forced and unnatural construction, and wholly unwarranted, when, to give it the construction adopted by the industrial commission, all of the sections of the act are in harmony with each other.

Counsel argues that it is absurd to have the extraterritorial insurance status of a Colorado employer or employee determined by the varying laws of other states. This is a general criticism that applies to all legislation invoking the principle of reciprocity and is directed against legislative policy with which we are not concerned. The principle is, however, recognized and invoked by legislative bodies in various fields, such as tariff legislation by the national Congress and in state laws that deal with motor vehicles and the licensing thereof, and we have recently construed a reciprocal act of the Colorado legislature dealing with state building and loan associations. *Ogden First Federal Savings & Loan Ass'n v. Armstrong, Treasurer,* 111 Colo. 309, 141 P. (2d) 173.

Counsel also argues that the interpretation which we adopt amounts to a suggestion from Colorado to other states of this country and to the provinces of Canada that, if they will not adopt extraterritorial provisions in their workmen's compensation acts, this state will not enforce extraterritorial provisions. This is a partial statement and says negatively what should be stated positively. It overlooks the fact that chapter 243 gives

our Workmen's Compensation Act a wider application than existed prior to the 1941 enactment. What we say is that the extraterritorial application added in 1941 is not absolute and unconditional, but is limited by and dependent upon reciprocal action of other states of this country and the Canadian provinces.

It appears from the record in this case that the state of Washington has adopted no law recognizing the principle of extraterritoriality in respect to insurance coverage of resident employees of its state temporarily employed in another state and in respect to coverage of employees resident in another state temporarily employed in the state of Washington. Therefore chapter 243, 1941 Session Laws, by its own terms can not be invoked, and section 3, being a part of the act, is necessarily inoperative in the present case.

The judgment of the trial court is reversed and the cause remanded, with directions to reinstate the order of the Colorado Industrial Commission.

Mr. Chief Justice Bakke dissents.