William L. VENES, Plaintiff-Appellant,

v.

Steven R. HECK and Grolier Interstate, Inc., Defendants-Appellees.

No. 79–1242.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 18, 1980.

Decided Feb. 26, 1981.

---

381

Terry W. Mackey, Cheyenne, Wyo., for plaintiff-appellant.

Maxwell E. Osborn of Osborn, Grant & Grant, Cheyenne, Wyo., for Steven R. Heck, defendant-appellee.

Nick Kalokathis of Lathrop & Uchner, P. C., Cheyenne, Wyo., for Grolier Interstate, Inc., defendant-appellee.

Before McWILLIAMS, BREITEN-STEIN, and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

William L. Venes was severely injured in a one car accident which occurred in the State of Wyoming. At the time of the accident Venes was riding as a passenger in a car owned and operated by Steven R. Heck. Immediately before the accident Venes began to adjust the car radio which was located between the driver's seat and the front passenger seat. Heck, the driver, noticed Venes adjusting the radio and in so doing took his eyes off the roadway. The automobile veered to the right, straddled a drainage curb and struck a bridge abutment head on. Both occupants sustained severe injuries in the accident and were taken to a hospital by ambulance.

Venes and Heck were salesmen for Grolier Interstate, Inc., and both of them operated out of Grolier's offices in Denver, Colorado. Grolier Interstate, Inc., a corporation which operates nationwide, sells reading materials, such as encyclopedias, primarily to parents of young children. Pursuant to instructions from their supervisor, Venes and Heck left Denver, Colorado, the day

before the accident to make a sales trip into the State of Wyoming. After arriving in Cheyenne, Wyoming, the two made several sales contacts, and then stayed overnight in a Cheyenne motel. The next day Venes and Heck started out toward Casper, Wyoming, to continue their sales trip, with Heck driving his vehicle and Venes riding therein as the only passenger. The accident described above occurred approximately 25 to 30 miles north of Cheyenne, Wyoming, on the road to Casper, Wyoming.

As a result of the accident, Venes brought suit in the United States District Court for the District of Wyoming against both Heck and Grolier. Jurisdiction was based on diversity of citizenship. By answer Heck denied negligence and alleged some affirmative defenses. Grolier, alleged, *inter alia*, that neither Venes nor Heck was employed by it, and that they were independent contractors.

Thereafter, Grolier filed an amended answer in which it alleged that Venes' exclusive remedy was under the Workmen's Compensation Act of the State of Colorado. It was only shortly before trial, therefore, that Grolier admitted, for the first time, that Venes and Heck were its employees operating in the scope of their employment when the accident occurred. Grolier then moved for summary judgment on the ground that the Colorado Workmen's Compensation Act provided Venes' exclusive remedy against Grolier and precluded any common law action against it. The trial court granted Grolier's motion and dismissed it from the case.

Venes' claim against Heck was tried to a jury. The jury returned a verdict in favor of Venes and awarded Venes damages in the amount of $7,900. By answer to a special interrogatory the jury determined that 10% of the negligence was attributable to Venes, himself. Accordingly, pursuant to Wyoming's comparative negligence statute,[1] the jury's verdict was reduced 10% to

the amount of $7,110. Judgment was then entered for that reduced amount. Venes filed a motion to amend the judgment by increasing the damage award or, in the alternative, for a new trial on the issue of damages only. This motion was denied. Venes now appeals both the judgment dismissing Grolier from the case and the judgment entered against Heck, contending that the latter is grossly inadequate. We shall first consider the adequacy of the damages awarded Venes.

As indicated, Venes was taken from the scene of the accident by ambulance to a Cheyenne hospital. Venes suffered lacerations over the left part of his face and a compound comminuted fracture of the left humerus involving the elbow joint. A "compound comminuted fracture" was described at trial as being one in which the bone breaks into more than two pieces and the broken bone penetrates through the soft tissues to the skin surface. The elbow wound was very dirty[2] and the wound later became infected, resulting in chronic osteomyelitis. Venes was a patient in the Cheyenne, Wyoming hospital for 11 days. On his release from the hospital Venes returned to his home in Ohio. Some time later Venes was hospitalized in Ohio on two different occasions for a total of 37 days for corrective surgery.

At trial it was stipulated that Venes' actual medical expenses, including hospital bills and cost of medical treatment, resulting from the accident, totaled $6,959.56. Venes testified at length as to his pain and suffering, the physical impairment which he sustained in the accident and the restrictions that such impairment imposed on his job opportunities. Three medical doctors testified in behalf of Venes concerning his injuries. Their testimony established that Venes had sustained a severe injury to his left arm and elbow which was complicated by the staph infection which he developed while in the hospital. One doctor estimated

---

1. Wyo.Stat. § 1–1–109 (1977).

2. Testimony was elicited at trial as to the significance of the dirtiness of the wound. The treating physician, testifying on behalf of Venes, stated that the foreign material, as well as the devitalized tissue, was a "focus" for potential bacterial infection.

that as a result of the accident Venes sustained a 30–35% permanent partial disability as a total working unit.

On the question of Venes' physical injuries and disability, defense counsel cross-examined Venes' medical witnesses only briefly, and called no medical witness to controvert Venes' evidence concerning the extent of his injuries. In fact, Heck was the only witness called by defense counsel. When Heck was asked by his attorney whether he was sorry that the accident happened, he replied as follows:

> I am particularly sorry for Mr. Venes. I realize that I have handicapped him for the rest of his life, and I would never want that to happen to me, but I am particularly sorry, and I offer him my most humble apologies for involving him in such a serious injury.

As indicated, the jury was not nearly as sympathetic to Venes' plight as was the defendant, and returned a verdict in the sum of $7,900, only $1,000 more than the amount which constituted Venes' actual medical expenses. Even that sum was then reduced by 10% based on the jury's determination that Venes was guilty of contributory negligence.

■ We have read the trial transcript carefully, and are fully convinced that the jury's verdict was grossly inadequate. The jury either ignored the uncontroverted evidence pertaining to the extent of Venes' injuries, or disregarded the trial court's instructions, which were in themselves adequate and complete. Appellate courts are understandably slow to set aside a jury's determination as to the extent of a plaintiff's damages in a personal injury action, but when a reviewing court is firmly convinced that a jury's award is grossly inadequate, the award cannot stand. *Brown v. Richard H. Wacholz, Inc.*, 467 F.2d 18, 20–21 (10th Cir. 1972). Furthermore, under the circumstances here involved and in light of the jury's initial determination that 10% of the negligence was attributable to Venes, we find the issue of liability to be inextricably intertwined with the issue of damages, mandating a remand of both issues. *See Gasoline Prods. Co. v. Champlin Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); *Cf. Brown v. Richard H. Wacholz, Inc.*, 467 F.2d at 21 (by implication). Accordingly, the judgment entered in favor of Venes against the defendant, Heck, in the amount of $7,110 is reversed and the cause remanded for a new trial on the issues of damages *and* liability.

■ Venes also appeals the summary judgment entered in favor of Grolier. As indicated, the trial court granted Grolier's motion for summary judgment on the grounds that under the Wyoming Worker's Compensation Act [3] the benefits provided Venes under the Colorado Workmen's Compensation Act [4] constitute Venes' exclusive remedy against his employer, Grolier, and preclude a common law action by Venes against Grolier. In thus ruling the trial court relied on the provisions of Wyoming Statute § 27–12–306 (1977).[5] That statute provides, in part, that an employee, who is hired outside Wyoming, and his employer, are exempt from the Wyoming act while the employee is temporarily within Wyoming doing work for his employer if the employer has theretofore furnished workmen's compensation insurance coverage un-

---

3. Wyo.Stat. § 27–12–101, *et seq.* (1977). In particular, Wyo.Stat. §§ 27–12–103, 27–12–106, 27–12–306 (1977).

4. Colo.Rev.Stat. § 8–40–101, *et seq.* (1973). In particular, Colo.Rev.Stat. §§ 8–42–102 (as amended), 8–46–202, 8–46–204 (as amended) (1973).

5. A federal district court entertaining a case on the basis of diversity jurisdiction must apply the law of the state in which he is sitting including that state's choice-of-law rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Supreme Court of Wyoming has held that the law of the place where the tort or wrong is committed is the law which governs and determines whether or not an act or omission gives rise to a right of action or civil liability for tort. *Duke v. Housen*, 589 P.2d 334 (Wyo.1979), *reh. denied*, 590 P.2d 1340 (Wyo. 1979), *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979).

der the worker's compensation law, or similar laws, of a state, other than Wyoming, which covers the employee's employment while in Wyoming. The statute further provides that compensation benefits, be it under the Wyoming act, or a similar law of the other state, are the exclusive remedy against the employer for any injury received by the employee while working for such employer in Wyoming. A further provision in the Wyoming statute requires that the extraterritorial provisions of the Wyoming act be recognized in the other state to the end that a Wyoming employer and employee, covered by the Wyoming Compensation Act, are exempt from the compensation laws of the other state while the employee is temporarily in the other state doing work for his Wyoming employer.

In the trial court, Venes advanced the argument that the Wyoming and Colorado compensation laws were not similar, because the Wyoming compensation statute is limited to extra hazardous employment[6] and the Colorado law provides broader coverage. Therefore, argued Venes, the extraterritorial provisions of the Wyoming act never came into play, and Venes was not precluded from maintaining a common law action in tort against Grolier. The trial court rejected that argument, and held that the Wyoming and Colorado compensation laws were "similar" in the sense that word is used in the Wyoming statute.[7]

In the trial court, as here, Venes also relied on Article 10, § 4 of the Wyoming Constitution. That section provides as follows:

> No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death. (As amended by Laws 1913, ch. 79.) (Emphasis added.)

The record before us contains a transcript of the hearing on Grolier's motion for summary judgment. That transcript discloses that the colloquy between the trial court and counsel was confined to a discussion of the Wyoming and Colorado compensation laws. We can find no reference by the trial court in that transcript to the provision of the Wyoming Constitution set forth above. At the hearing, counsel for Venes indicated that he was taken somewhat by surprise inasmuch as Grolier had previously taken the position that neither Venes, nor Heck for that matter, was an employee of Grolier, and then, at the last minute, had switched positions and conceded, at least for the purposes of its motion for summary judgment, that Venes was its employee.

---

6. There is no suggestion that Venes was engaged in an activity which would qualify as an extra hazardous occupation within the terms of Wyo.Stat. § 27–12–106 (1977).

7. In so holding, the trial court primarily relied on a decision of the Colorado Supreme Court in *Frankel Carbon & Ribbon Co. v. Aaron*, 113 Colo. 429, 158 P.2d 929 (1945) (overruled in part by *State Compensation Ins. Fund v. Howington*, 133 Colo. 583, 298 P.2d 963 (1956)). We note that *Frankel* dealt with a comparison of the workmen's compensation laws of the States of Colorado and Washington. The court's suggestion therein that Wyoming had passed a law which was similar to that of Colorado would appear to be merely *obiter dictum*.

Accordingly, the trial court granted Venes time within which to file a brief in opposition to the summary judgment motion, Grolier having previously filed a brief in support thereof. In its brief, Venes did urge the provisions of the Wyoming Constitution set forth above as a reason for denying Grolier's motion for summary judgment. Insofar as we can ascertain from the record before us, the trial judge made *no* reference to the Wyoming constitutional provisions in its order granting Grolier summary judgment. We are concerned about the effect of Article 10, § 4 of the Wyoming Constitution on the present dispute between Heck and Grolier.

Article 10, § 4 of the Wyoming Constitution provides that *no* law shall be enacted which would limit the amount of damages to be recovered for causing the injury or death of any person. The same constitutional provision also states that any contract or agreement with an employee waiving any right to recover damages from the employer for causing the death or injury of the employee is void. Article 10, § 4 then goes on to declare that "[A]s to all extra hazardous employments" the legislature shall provide by law for a compensation fund out of which benefits will be paid to injured persons or, in the case of death, to the dependent members of the deceased's family.

Under the aforesaid constitutional provision it would appear, though we are not certain, that any workmen's compensation law enacted in Wyoming is restricted to "extra hazardous employment," and that a Wyoming statute which sought to provide benefits for one injured in an employment which was *not* extra hazardous would be unconstitutional. If this be true, *i. e.*, if Wyoming could not itself enact a compensation statute that would cover a person injured in a non-extra hazardous employment, it seems somewhat anomalous that Colorado law should be given extraterritorial effect in the instant case and be the exclusive remedy for an employee injured in Wyoming in non-extra hazardous employment. Additionally, it is conceivable that the provisions of Article 10, § 4 of the Wyoming Constitution have bearing on the trial court's determination that the Colorado and Wyoming compensation laws are "similar."

 There being nothing in the record before us to indicate that the trial judge gave any consideration to Article 10, § 4 of the Wyoming Constitution, we are of the view that the preferred procedure is to reverse the summary judgment and remand the matter for reconsideration. The views of the resident district judge for the District of Wyoming, who is presumptively conversant with local Wyoming law, as to the meaning of a provision in the Wyoming Constitution and its impact, if any, on the Wyoming Worker's Compensation Act, particularly on the extraterritorial provisions contained therein, are of considerable interest to us.[8]

8. *See Alleman v. Lincoln National Life Insurance Company*, 636 F.2d 1195 (10th Cir. 1981); *Utah Farm Bureau Insurance Company v. Dairyland Insurance Company*, 634 F.2d 1326 (10th Cir. 1980); *Julander v. Ford Motor Company*, 488 F.2d 839, 844 (10th Cir. 1973).