# No. 17,881.

STATE COMPENSATION INSURANCE FUND, ET AL. *v.*
AUBREY J. HOWINGTON, ET AL.
(298 P. [2d] 963)

Decided June 18, 1956.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, for plaintiff in error State Compensation Insurance Fund.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

Messrs. ADAMS, HECKMAN, TRAYLOR & ELA, Mr. IVAN P. KLADDER, for defendant in error Minerals Engineering Company.

Mr. ALBIN ANDERSON, JR., for defendant in error Aubrey J. Howington.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

DEFENDANTS in Error, Aubrey J. Howington and Minerals Engineering Company, a corporation, were respectively employee and employer in proceedings below relating to a claim for workmen's compensation and will be referred to herein as claimant and the company. Plaintiffs in Error herein will be referred to as defendants or by name.

The controversy before us involves the jurisdiction of the Industrial Commission of Colorado over an accident to claimant who was originally employed in Colorado, and which occurred in Utah where he was then employed by the company.

The record discloses that claimant was employed by the company in Grand Junction, Colorado, and immediately sent to Utah to work on a mining project. On September 28, 1954, a few days after being transferred to a different Utah mine, he was accidentally injured by a dynamite blast arising out of and during the course of his employment. Following the accident he was taken to a Utah camp, and from there to a Colorado Hospital. Claimant performed no work for the company in Colorado, but did have his mail sent to Colorado in care of his employer. He was unmarried and was living in a hotel in Colorado when hired; returned to Colorado on his weekends off and had Colorado Income Tax withheld from his wages. The company carried Colorado Workmen's Compensation Insurance on its miners and other employees for its contract drilling and mining operations. It carried similar Utah insurance on workers employed by it at an oil refinery in Utah. There was no set time for claimant or other employees engaged in similar work to be out of Colorado on various jobs, and *this claimant had been out of the state less than six months when injured.* The company had not secured "extraterritorial coverage" for its Utah employees at the

time of this accident, but did secure it a short time later, apparently because of the defendant's denial of jurisdiction and its possible effect on other employees. Claimant could have been transferred by the company from Utah to Colorado or to work in other states.. The company reported his injury to the Colorado Industrial Commission, but not to the Utah Industrial Commission. After this action was begun claimant filed a claim with the Utah Commission for the same accident. We are not, however, concerned with that matter.

Hearings before the Colorado Referee and Colorado Industrial Commission were adverse to claimant and the company, both of whom have taken the same side of the case. They sought review in the district court of Mesa County, Colorado, where the court reversed the finding of lack of jurisdiction and ordered the claim allowed and assessed costs against the Insurance Fund. Their motion for a new trial being denied, defendants are here by writ of error, urging four points for reversal:

1. That "the court erred in its order and decree of December 21, 1955, ordering, adjudging and decreeing that the findings of fact made by the referee and the Industrial Commission in this case together with the law bring the plaintiff's claim within the terms of a compensable claim under the extraterritorial provisions of the Colorado Statutes enumerated therein."

2. That "the court erred in finding that the findings of fact above mentioned do not support the orders and awards of the referee and the Industrial Commission."

3. That "the court erred in ordering and decreeing that the award of the Industrial Commission be set aside and in ordering that the claim be remanded to said Commission with the instructions to enter an award in favor of the claimant as directed therein."

4. That "the court erred in assessing costs against the defendants and in requiring the State Compensation Insurance Fund to pay the same."

Claimaint and the company assert the propriety of the lower court's judgment and urge that defendants are estopped from asserting any defense because they knew or should have known from the company's withholding tax returns and claim forms filed that it had employees in Utah and in other states; that other employees injured in prior accidents as well as in this same accident, in the foreign jurisdictions, had their claims recognized in Colorado.

The briefs of both parties, as well as the fine detailed orders of the referee, have provided us with clear and concise statements of fact as well as citations. Naturally they arrive at opposite conclusions. We think this case must be decided upon the construction of those provisions of our statute relating to out of state employment of persons hired in Colorado. Accordingly the first three grounds of alleged error can be stated as a single subject.

*First Question To Be Determined.*

*Is an employee hired in Colorado by a Colorado operating employer who carried Colorado Workmen's Compensation Insurance, and which employee performs no duties in Colorado and is employed in Utah on an indefinite basis, entitled to the protection and awards of Colorado State Compensation Insurance if he is accidentally injured in Utah from a cause arising out of and during the course of his employment?*

This question is answered in the affirmative. The statute in question was adopted in 1941 as an amendment to Sec. 419, Ch. 97, Vol. 3, 1935 Colo. Stat. Anno. and now appears as C.R.S. 1953, 81-16-1, et seq. This article is as follows:

"81-16-1. Exemptions — laws of other state furnish exclusive remedy. — Any employee who has been hired outside of this state, and his employer, shall be exempted from the provisions of the workmen's compensation act of Colorado while such employee is temporarily within this state doing work for his employer if such employer has furnished workmen's compensation insurance cover-

age under the workmen's compensation or similar laws of a state other than Colorado, so as to cover such employee's employment while in this state; provided the extraterritorial provisions of this article are recognized in such other state and provided employers and employees who are covered in this state are likewise exempted from the application of the workmen's compensation or similar laws of such other state. The benefits under the workmen's compensation act or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this state. .

"81-16-2. Certificate of other state prima facie evidence. — A certificate from the duly authorized officer of the industrial commission or similar department of another state certifying that the employer of such other state is insured therein and has provided extraterritorial coverage insuring his employees while working within this state shall be prima facie evidence that such employer carries compensation insurance.

"81-16-3. The injury outside of state — benefits in accordance with state law. — If an employee who has been hired or is regularly employed in this state receives personal injury by accident arising out of and in the course of such employment outside of this state he, or his dependents in case of his death, shall be entitled to compensation according to the law of this state. This provision shall apply only to those injuries received by the employee within six months after leaving this state, unless prior to the expiration of such six months period the employer has filed with the industrial commission of Colorado notice that he has elected to extend such coverage a greater period of time.

"81-16-4. "State" construed. — As used in this article, the term "state" shall be construed to include any state or territory of the United States, the District of Columbia, and any province of Canada.

"81-16-5. Article deemed to be part of workmen's compensation act. — This article shall be known and be deemed to be and become a part of the workmen's compensation act of Colorado."

Prior to the adoption of this statute in 1941 this Court had held that the prerequisites for recovery of compensation in Colorado by a claimant injured outside of Colorado were:

1. The contract of employment must have been made in Colorado.

2. The claimant must have performed a substantial amount of his work in Colorado.

3. The claimant must have been but temporarily employed in a foreign jurisdiction.

The defendants have adopted the supplemental order of the referee dated June 9, 1955, as part of their brief and as pertinent here that order states in part:

"Under the rule, the Workmen's Compensation Act of Colorado has been, and still may be, extended to cover employees in foreign jurisdictions when an employee, or several employees, are temporarily employed outside Colorado, regardless of whether formal extra-territorial coverage has been negotiated, or whether the foreign jurisdiction has, or has not, enacted a reciprocal statute on this subject, or whether the employer is, or is not, subject to the Workmen's Compensation Act of the foreign jurisdiction.

"In 1941 the Colorado Legislature enacted the extra-territorial provisions of the Colorado Act, the same being Sections 150-153 (a) of the pamphlet edition, or Sections 81-16-1 to 81-16-5 C.R.S. 1953. Under these extra-territorial provisions, which provide for reciprocal recognition of coverage between states having similar provisions in their Compensation Acts, it is necessary (Section 150: 81-16-1),

"(a) That the employer shall have furnished workmen's compensation coverage under the Compensation Act (of his home state) to cover his employes;

"(b) That the extra-territorial provisions of the Colorado Act are recognized in such other state; and

"(c) (151: 81-16-2) That a certificate from the Industrial Commission of the one state (home state) that an employer is insured and has provided extra-territorial coverage within the other state (foreign jurisdiction) be furnished by the Industrial Commission, or similar body, of the state in which the home operations are conducted to the Industrial Commission, or similar body, of the state in which extra-territorial coverage of the employer's employees is desired.

"Under this provision, it is possible for an employer insured in Colorado, who desires to take employees into a reciprocal jurisdiction (Utah, for example) to notify the Industrial Commission of Colorado in advance of the event, and to be certain that proper notice of Colorado coverage is given to the Utah Commission and that Colorado proposes to cover Colorado employees temporarily employed in Utah. In many instances, it is thus possible for an employer, who would otherwise be required to carry insurance in the foreign jurisdiction, to extend his Colorado (home) coverage, and to escape the expense of purchasing a workmen's compensation policy in the foreign jurisdiction for a short term job.

"In the instant case, the employer carried workmen's compensation insurance in both Colorado and Utah with the State Compensation Insurance Funds of the respective states, and in both states the employer is subject to the Compensation Act. The employer, then, had secured the necessary workmen's compensation insurance in Colorado. The extra-territorial provisions of the Colorado Act are recognized in Utah and the similar provisions of the Utah Act are recognized in Colorado. Prior to the accident, the employer had not secured a certificate from the Industrial Commission of Colorado, certifying to the Industrial Commission of Utah that the employer was insured in Colorado, and that Colorado was providing extra-territorial coverage for Colorado

employees temporarily employed in Utah, and it was not until December 22, 1954, that the Industrial Commission of Colorado, at the employer's request, made the necessary certification to the Utah Commission and elected to extend such extra-territorial coverage (Ex. C-3) which was recognized by the Industrial Commission of Utah on December 27, 1954 (Ex. C-4). The Industrial Commission of Utah similarly certified the employer for extra-territorial coverage of Utah employees in Colorado on December 16, 1954 (Ex. C-1) which certificate was recognized by the Colorado Commission December 22, 1954 (Ex. C-2).

"This recognition of reciprocal extra-territorial coverage by Colorado and Utah for employees of the one state temporarily employed in the other and vice versa was not effected until after the hearing of December 2, 1954, and after the order of the Referee dated December 13, 1954. In the absence of such recognition of extra-territorial coverage provisions by an employer subject to the Act of both states, the employee becomes subject to the provisions of the Act of the state in which he was employed at the time of the accident, subject only to his right to claim compensation in the state in which he was hired under the "judicial rule" for extra-territorial coverage. In this case, no substantial part of the claimant's work, or any part of his work, was performed in the State of Colorado, and he cannot prevail under the "judicial rule." Since the employer had not procured recognition of extra-territorial coverage for Colorado employees temporarily employed in Utah under the provisions of the extra-territorial sections of the Utah and Colorado Acts, this employee cannot claim, as a Colorado employee under the statutory extra-territorial provisions of the Act (Sections 150-153 a). His remedy lies in the State of Utah, where he sustained his injuries."

From the above it clearly appears that the referee and defendant Commission based their conclusion upon the decision of this Court in *Frankel Carbon*

*and Ribbon Co. v. Aaron* (1945) 113 Colo. 429, 158 P.
(2d) 929, and made no allowance for the wording in the
Colorado statute, C.R.S. 1953, 81-16-3, which *expressly*
permits employment of Colorado hired persons outside
of Colorado for *not to exceed six months* without the
loss of the Colorado compensation coverage and protec-
tion. Giving consideration to the entire statute we be-
lieve it was the legislative intent, clearly expressed, to in-
clude employees such as claimant here within its benefits.

C.R.S. 1953, 81-16-1, applies to the method to
secure extra-territorial benefits under reciprocal statutes
both for persons hired in foreign jurisdictions, who work
in Colorado, and for persons hired in Colorado who
work in other jurisdictions. There is no time limit pro-
vided on either category of employment. Its primary pur-
pose is to provide reciprocity where so requested. C.R.S.
1953, 81-16-3, applies to employees *hired in* or regularly
employed in Colorado, who receive injuries while em-
ployed outside this state and is a *second method* pro-
vided for the protection of employees for the limited
period provided therein. It is obviously meant to pro-
tect the employee who may be sent out of state either
for temporary or occasional work or before his employer
has applied for and secured reciprocity under 81-16-1.
It allows the employer to secure an extension of time,
if necessary, to protect his employees while engaged
without the state and does not depend upon the pro-
visions relating to reciprocity.

The facts in the Frankel Co. case supra are different
than those here. There the claimant Aaron had been
employed in Colorado in 1930 and did nearly all of his
work as a traveling salesman outside of Colorado. While
so engaged in the State of Washington in the year 1942
he was killed in an automobile accident. The court,
with one Justice dissenting, found that Washington had
no reciprocal statute and that claimant could not recover
under our judicial decision rule or under the reciprocity
provision of our state — C.R.S. 1953, 81-16-3. Mr. Jus-

tice Jackson, in ruling that Sec. 3 cannot be construed as independent of the reciprocity required by Sec. 1, said in part:

"To state it another way, section 3 gives an employee going outside of this state the right to remain protected by the Colorado insurance coverage, *subject, however, to the second condition in section 1, and if that condition does not exist the whole act becomes inoperative—which includes section 3 as well as section 1.* So interpreted, the three sections of the act make a balanced and coherent law which comes into play only when there is a reciprocal law in another state to bring it to life and give it force and effect. *If no other state enacts a reciprocal law, there is no area upon which this Colorado law can operate.*" (Emphasis supplied.)

 That opinion failed to give recognition to the time limit provided in Sec. 3 and failed to recognize that the provision for six months of foreign employment *of Colorado hired employees* provides a second method to protect Colorado employees while reciprocity was being (or could be) sought by their employers. The requirements of Sec. 1 cannot be fulfilled in a short period of time and afford no protection to an employee who must be sent out of Colorado on little if any advance notice. Sec. 3 was intended to bridge the gap between and extend the protection of the Compensation Act to employees injured while employed out of the state within the six months period. Here the premium was paid in Colorado and the claimant hired in Colorado by a Colorado employer, thus we have a *res* to which the law of Colorado can attach for compensation. Also claimant's employment contract, by operation of law, contains all applicable parts of our statutes entitling him to the benefits so provided.

 In the Frankel Company case *supra* claimant had been employed for more than six months outside the state of Colorado. *His employer had not complied with Sec. 3 by securing an extension of time, nor had he*

*sought coverage under Sec. 1.* Under the facts present in that case the conclusion reached was correct and if limited to the point necessary to a decision, is not in conflict with our present construction of the statute, however, to the extent that it is in conflict with our present holding, it is expressly overruled. *Allen v. Ind. Com.,* 110 Utah 328, 172 P. (2d) 669, is a Utah case decided in 1946, under facts similar to our situation here. Sec. 42-1-52 of the Utah Statute is exactly the same as our statute 1953 C.R.S. 81-16-3 except for the word "Utah" in place of "Colorado." There a butcher was hired in Utah by a Utah covered employer to work in Nevada. He was injured in Nevada while so employed and died there. The court found that he was covered under the Utah Workmen's Compensation Act.

We approve the views expressed in the Allen case *supra* even though the Utah statute, Utah Code Annotated 1953, 35-1-46, is a compulsory statute requiring employers to secure compensation insurance, while the Colorado statute, C.R.S. 1953, 81-2-6, is elective. We hold that this difference does not effect the reciprocity or out of state employment provisions. The cases cited by defendants, arising prior to the passage of the 1941 amendment, now known as C.R.S. 1953, 81-16-1, et seq., are no longer applicable in Colorado. Among these are: *Platt, Inc. v. Reynolds,* (1929) 86 Colo. 397, 282 Pac. 264; *Tripp v. Ind. Com.,* (1931), 89 Colo. 512, 4 P. (2d) 917; *Home Co. v. Hepp,* (1932), 91 Colo. 495, 15 P. (2d) 1082; *U. S. F. & G. Co. v. Ind. Com.,* (1936) 99 Colo. 280 61 P. (2d), 1033. Nor is the cited case of *Wandesee v. Moskewitz* (Wis. 1929), 198 Wis. 345, 223 N.W. 837, now in point for the same reason.

The case of *Kutt v. Beaumont Birch Co.,* (Pa. 1955) 110 A. 2nd, 816, cited by defendants in their reply brief is not in point for there the employee had exceeded the statutory period of ninety days permitted for out of state employment; thus arose a similar situation to that in the Frankel Carbon Company case *supra.* Nor is *Ind.*

*Com. v. Plains Co.* (1953), 127 Colo. 506, 259 P. (2d) 282, also cited, applicable to the facts or law herein presented.

Claimant's and the company's citation of *Jutton-Kelly Co. v. Ind. Com. of Wis.* (1936) 220 Wis. 127, 264 N.W. 630, is not in point for there a statute of limitations was involved, nor is their citation of *Red Rover Copper Co. v. Ind. Commission of Arizona* (1941) 58 Ariz. 203, 118 P. (2d) 1102, in point for that case involved a signed waiver held to be against public policy.

 We have examined all of Chapter 8, C.R.S. 1953, and find nothing conflicting with the views herein expressed and several provisions therein such as payments to non-resident dependents (81-11-15) sustain our belief that the legislature can and has provided other types of out of state benefits. Individual articles in that chapter must be construed with others therein appearing. The public policy of Colorado is not violated by our interpretation here since the legislature has full authority to provide, and has provided, for out of state coverage of employees under conditions where Colorado would have jurisdiction over at least part of the subject matter.

We cite with approval the Wisconsin case of *Val Blatz Brewing Co. v. Ind. Co.*, 201 Wis. 474, 230 N.W. 622, 625, quoted in the dissent in *Fay v. Ind. Com. of Utah* (1941), 100 Utah 542, 114 P. (2d) 508, cited in defendants' brief. Therein the court said in part:

"The state has such an interest in the welfare and protection of its citizens and of those dependent upon them that it may in the exercise of the police power extend the protection of its Compensation Act to citizens of the state who are injured while performing services outside its boundaries."

The legislature having spoken, the rule of *judicial decisions is no longer in effect in Colorado* since the enactment of the 1941 statute *supra.* The only requirements for covered Colorado employees now are:

(1) Hired in Colorado and (2) employed outside of Colorado for not over six months by a Colorado covered employer unless the time is extended as provided in C.R.S. 1953, 81-16-3.

*Second Question To Be Determined.*

*Does it make a difference that the employer here carried Utah Workmen's Compensation Insurance on certain Utah employees?*

■ This question is answered in the negative. The reciprocal provisions of the Colorado and Utah statutes in question are not affected by this decision. If a Colorado employer contemplates having a Colorado hired employee in his employment in Utah for *more than six months,* he must, to protect himself and his employee under our statute, secure either the extension provided in C.R.S. 1953, 81-16-3, or take the necessary steps provided by C.R.S., 1953, 81-16-1, and 2 to secure reciprocal coverage. The Utah statute has no bearing on this case since reciprocity was not involved.

*Third Question To Be Determined.*

*Does the fact that provisions in our Colorado statute relating to health and inspection of working conditions cannot be checked or enforced in Utah, affect our decision?*

■ This question is answered in the negative. Our statute does not and could not provide for out of state inspections. The legislature provided the coverage for employees such as claimant to protect such workers and their dependents. Such statutes are to be liberally construed to effect the worthy public and humanitarian purposes intended. *University of Denver v. Nemeth,* 127 Colo. 385, 257 P. (2d) 423.

*Fourth Question To Be Determined.*

*Did the trial court err in assessing costs against the defendants and in requiring the State Compensation Insurance Fund to pay the same?*

This question is answered in the negative. Sec. 109 of the Workmen's Compensation Act, C.R.S. 1953, 81-14-18, provides that:

"No fee shall be charged by the clerk of any court for the performance of any official service required by this Act. On proceedings to review any order, or award, costs as between the parties shall be allowed, or not in the discretion of the court, but no costs shall be taxed against said commission. * * *"

██ We must assume that the learned trial court was appraised of what the costs were for and that they were proper. Clearly that court under the statute had the authority to allow costs, but not against the Commission. An allowance against the defendant State Compensation Insurance Fund of the State of Colorado is not against the "Commission" which latter term means the Industrial Commission.

It is not necessary to determine the question raised by claimant as to alleged estoppel in view of our conclusions on the other questions before us. One comment concerning the evidence is deemed important by us. The record shows that in the first accident report form (Form S.F. No. 1 R 47, Exh. No. 1) filed by the company for claimant the answer to question 14 was:

"14. Did accident occur on employer's premises No. If not, where? Northwest Development Co. ───────── Yes or No. Mine (Minerals Engineering Co. is contracting mining.)"

The company at the hearing introduced other accident reports to show recognition by defendants of allegedly similar claims. Several of these claims, as well as this claimant's, had similar meaningless replies to question 14. Such answers certainly do not furnish the necessary information for state officials charged with public responsibilities to properly perform their duties. The employer clearly has a duty to show whether the accident occurred in Colorado or elsewhere to the end that the Commission may administer the statutes properly. The

record shows that this was not a deliberate attempt to mislead the defendants and our criticism is directed only to the evidence introduced. Since the statute requires reports to be on forms furnished by the Commission the state shall provide for more definite statements of fact to secure its information and to carry out its defined powers.

The judgment is affirmed.