No. 18,027.

DENVER TRUCK EXCHANGE AND STATE COMPENSATION
INSURANCE FUND *v.* LILA M. PERRYMAN AND INDUSTRIAL
COMMISSION OF COLORADO.
(307 P. [2d] 805)

Decided February 25, 1957.   Rehearing denied March 18, 1957.

Mr. Harold Clard Thompson, Mr. Louis Schiff, Mr. Alios Rockett, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error Industrial Commission of Colorado.

Mr. Lansford F. Butler, for defendant in error Lila M. Perryman.

*In Department.*

Mr. Justice Sutton delivered the opinion of the Court.

This is a workmen's compensation case involving a death which occurred outside Colorado.

Defendants in error were defendants below. Plaintiff in error Denver Truck Exchange, a Colorado Corporation, is referred to herein as "employer"; plaintiff in

error State Compensation Insurance Fund, the insurer, is referred to as the "Fund"; defendant in error Industrial Commission of Colorado is referred to as the "Commission"; defendant in error Lila M. Perryman is referred to as "claimant"; and the deceased Louis E. Perryman is referred to as "Perryman."

This matter is here by writ of error to review a judgment of the district court which affirmed an award of benefits to the claimant widow by the Commission in a proceeding arising under the Workmen's Compensation Act of Colorado, C.R.S. '53, 81-1-1, et seq. There were the required proceedings before a referee, the Commission and before the trial court and after judgment a new trial was dispensed with.

The record discloses no dispute in the facts. Part of the evidence is by written stipulation; the only testimony is that of Henry Gosh, employer's president and general manager, who was called as a witness by Claimant.

On December 13, 1952, at Smith Center, Kansas, Perryman, who had been last seen driving one truck and towing another, was found dead in a ditch about 150 feet from his two trucks. The vehicle he was driving had its door open, lights on and ignition off. No autopsy was performed though he met a violent death, the cause of which is not in dispute.

The truck which Perryman was driving and the towed vehicle both were the property of employer whose principal place of business is in Englewood, Colorado. They had been picked up by Perryman at Pontiac, Michigan, for delivery to the employer at Englewood, Colorado.

The questions involved here are:

1. Was the transport contract entered into in Colorado or Michigan?

2. Was a substantial part of Perryman's work performed in Colorado?

3. Was Perryman an employee of employer within the definitions of our statute?

## FIRST QUESTION TO BE DETERMINED:

*Was the transport contract in question entered into in Colorado?*

This question is answered in the negative.

■ The evidence shows that prior to 1951 employer had its Colorado employees go to Michigan to pick up trucks for it. In 1951, one Estlinbaum, who was in the truck transport business in Detroit, asked employer if he could pick up employer's trucks at Pontiac, Michigan, and either drive them *or have them driven* to Colorado. The arrangements were to be as follows: Employer, at his expense, secured release forms for each vehicle which authorized a driver to pick up the designated truck. He inserted Estlinbaum's name in each release (and occasionally later the names of others designated by Estlinbaum) and then sent them to him in Detroit, Michigan, with a check for $150.00 for advance expenses. In addition, once the trucks arrived in Colorado employer reimbursed Estlinbaum for actual gas, oil, grease and other actual transport expenses, if any. Estlinbaum paid his own personal expenses and for his own transportation back to Detroit. Estlinbaum furnished the couplings for the tow trucks. The actual contract price was always to be an amount equal to fifty per cent of the railroad freight rate plus the mentioned reimbursable items. The title to the trucks was in employer who insured them and who furnished his dealer's license plates for same. The route to Colorado had to be either through Kansas or Nebraska. If a truck had been sold in Colorado before delivery, a delivery date was set, otherwise not, then only a reasonable time was expected. No stops or speeds, other than legal speeds, were imposed by employer on the driver. No controls were exercised over the time of leaving or over the route other than as above stated, or over any other mode of operation. *Each delivery was fully paid for when completed* in Colorado. No workmen's compensation insurance, no social security and no withholding tax

were paid by employer on Perryman or, we assume on Estlinbaum or his son who also helped out, for he never considered them as employees.

The record further shows that during the approximately two years involved Perryman made "about five trips" to Oklahoma for other unknown owners and about eight trips to Denver.

Employer had never seen or heard of Perryman until, following a call from Estlinbaum, he arrived sometime prior to this accident with two trucks. Perryman thus first arrived as Estlinbaum's agent or employee. At that time in Englewood, Colorado, employer told Perryman how he reimbursed Estlinbaum for his truck expenses. Perryman had paid out his own money coming from Michigan so when the employer asked how to make out the check for the truck expense Perryman said to make it to him which was done. However, the record also shows some of the other checks at later times involving Perryman were made to Estlinbaum, and that Estlinbaum continued to have an interest in the haulage even though for a time he was too busy to do the work himself. The final check for the fatal trip was drawn to Estlinbaum. *He sent Perryman* several times and *sent his son* another time.

Perryman lived in Michigan; the claim involved was filed from Michigan by a Michigan attorney, and claimant at the time of the tragedy and when she filed her claim lived in Michigan. There was no written agreement covering the mode of operation. There were no agreed number of trips and employer did not have to send any of his business to Estlinbaum. On at least one occasion employer handed Perryman releases in Colorado together with the usual advance payment to use in Michigan. It is clear that each trip was considered a separate contract by the parties and was not intended to be one continuous agreement. Estlinbaum had no duty to accept the releases and checks sent to him in Detroit, where he received all his mail from employer. There

was no liability disclosed for Estlinbaum if he did not accept the releases and no duty to perform unless and until he used a release to pick up a truck or trucks. Once he did use a release, however, employer had no right to discharge him and he was bound to complete the task according to plan. Employer was interested only in the results. Perryman was not a servant or employee as defined in *Ind. Com. v. Bonfils,* 78 Colo. 306, 241 Pac. 735, which case involved a coal hauler employed to haul coal if there was any to be hauled when he was called. It is clear that the mailing of the instruments constituted a unilateral offer to an independent contractor to be accepted by actual performance.

At the time Perryman was killed the particular releases for the trucks in his custody had been sent to Estlinbaum at Detroit. There are two checks for $150.00 in evidence both dated November 22, 1952, one payable to Perryman and one payable to Estlinbaum. The latter check was for the delivery when Perryman was killed. This offer to Estlinbaum could be accepted only by him, 17 C.J.S. 372, Sec. 40, and Perryman clearly was working either for or with him, not this employer, when he was killed. We cannot infer a contract of this employer with Perryman where the parties did not intend to make one.

Under the facts here presented there was no original meeting of the minds in Colorado. The first discussions in Colorado were merely preparations or arrangements to enter into later separate contracts in Michigan. "Arrangements" are generally considered to be different from "Agreements." 17 C.J.S. 312, Sec. 1 c, says: "In the contract sense, 'agreement' is the expression of parties of a common intention to affect their legal relations. It is synonymous with 'compact' and 'undertaking' and distinguishable from 'arrangement.'" The fact that some checks and some releases were physically delivered in Colorado, *after* the course of conduct had been agreed upon, does not alter the basic fact that it was intended that each delivery be a separate contract beginning when

the releases were used in Michigan. The sole contract to be considered here is the one when Perryman was killed. It did not exist until Estlinbaum received the releases and check for that trip and accepted them by beginning performance in Michigan. These items, when sent, constituted the offer. Estlinbaum's acts in Michigan were the acceptance. The ultimate criterion of the place where the contract is deemed to have been made is the place where the last act necessary to complete it was done. *Wharton Conflict of Laws,* 3rd Ed., Sec. 422 (a); *Williston on Contracts,* Revised Edition — Place of Contracts, 309, Sec. 97; *C.I.T. Corporation v. Sanderson,* 43 Fed. (2) 985; *Johnston v. Ind. Com.,* 352 Ill. 74, 185 N.E. 191.

"A contract is an agreement which creates an obligation. Its essentials are competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." 17 C.J.S. 310, Sec. 1a.

"Generally speaking, the place of making a contract is determined according to the parties' intention; as a rule, it is considered to be the place where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed." 17 C.J.S. 813, Sec. 356. " * * *, where delivery of the instrument, evidencing the contract is regarded as essential to the completion of the contract, it is regarded as made at the place of delivery." * * * "The place where the parties agree on the terms of the contract or where the contract is written, signed, or dated, or the obligor's place of residence does not necessarily fix the place where a contract is entered into." 17 C.J.S. 814, Sec. 356. In *Bunde v. Commercial Credit Company,* 200 N.C. 511; 157 S.E. 860, a contract for purchase of accounts signed by the seller and mailed to the purchaser in another state, where it was signed, was held to have been executed in such state, the signing by the purchaser being the last act essential to the completion of the agreement. "An offer which calls for the doing of a particular act by the of-

feree may be accepted by the performance of the act." * * * "In such a case performance is the only thing needful to complete the agreement and to create a binding promise * * *." 17 C.J.S. 374, Sec. 41 d. "If an offer contemplates a unilateral contract and calls for the performance of an act, the place where that act is done is the place of the contract. Thus if goods are shipped in conformity with an offer, the place of the contract is the place of shipment, since the act requested is the shipment." *1 Williston on Contracts,* Revised Edition 310.

The fact that Estlinbaum turned the delivery over to Perryman in Michigan does not alter the law. *Aetna v. Ind. Com.,* 110 Colo. 422, 135 P. (2d) 140, cited by claimant is not applicable here. There a regular employee who lived in Colorado worked for a Greeley, Colorado, auto firm and was to pick up trucks out of state and return them to Colorado. He was killed in Kansas and of course was covered by our statutes.

This is not a case where an entire contract for a series of deliveries had been entered into before the first delivery was commenced. Here there were no definite number of deliveries or for any certain time. A contract of hire is subject to the same rules as other contracts even though workmen's compensation laws are liberally construed in our state.

Nor is C.R.S. '53, 81-9-1, applicable here as relating to workmen's compensation coverage by an employer and Colorado contractor contracting out its usual or normal work to "any lessee, sublessee, contractor or subcontractor." No case has been cited, and we know of none where a person like this employer has been held liable under such a statute for the out-of-state death or injuries incurred by the employee of or joint venturer with an out-of-state independent contractor where the contract is made outside Colorado and no work was performed in Colorado thereunder.

We have in Colorado decisions of this court which hold that having a "casual" employee is not sufficient

under our statute, C.R.S. '53, 81-2-7, to relieve an employer of liability under our Act if the employee at the time of the accident is engaged in the usual course of the employer's business (for example see *Royal Co. v. Ind. Com.,* 105 Colo. 25, 94 P. (2d) 697, and *Kamp v. Disney, et al.,* 110 Colo. 518, 135 P. (2d) 1019); and we have held that under what is now C.R.S. '53, 81-9-1, one may be an employee by virtue of the statute, for the purposes of workmen's compensation, when in fact he is not an employee by common-law definition. *Continental Co. v. Sirhall, et al.,* 122 Colo. 332, 222 P. (2d) 612. In *Ind. Com. v. Continental Co.,* 78 Colo. 399, 242 Pac. 49, we held that under this statute (C.R.S. '53, 81-9-1) the employee of an independent contractor is an employee covered by the terms of our statutes. We believe, however, that to extend this section to cover a situation, as is herein presented, is far beyond the legislative intent and could lead to innumerable misunderstandings between state governments, to unnecessary conflicts between statutes of various states, and to conjectural and limitless liabilities for Colorado employers and their insurers. On the other hand it would not benefit Colorado employees or those hired in Colorado to work outside of this state, for they are already protected. We hold, therefore, that even though bringing in trucks or having them brought into Colorado from Michigan by an independent contractor was part of the usual and normal business of this employer, nevertheless this statute does not apply to such employment.

▪ Where the facts are undisputed, as here, the question is one of law and this court on review of an Industrial Commission case is not bound by the Commission's conclusions of law. *Ind. Com. v. Bonfils, supra.*

Under the undisputed evidence here presented the statement of the Commission that "In the Fall of 1951, respondent employer and one Estlinbaum entered into an agreement at Englewood and Denver, Colorado * * * " and the conclusion of law, after Perryman had been sent

to Colorado, "That Perryman entered into a contract of employment in the latter part of 1952 with the respondent employer in Englewood, Colorado," are erroneous and cannot stand.

## SECOND QUESTION TO BE DETERMINED:

*Was a substantial part of Perryman's work performed in Colorado?*

This question is answered in the negative.

■ There was a separate contract of employment each time a trip was made. Since Perryman left Michigan where the contract for his last trip was entered into, and since he was killed in Kansas before arriving in Colorado, he performed no work in Colorado. The finding of the Commission in its Supplemental Award dated May 17, 1956, that " * * * a substantial and appreciable part of Perryman's work and employment was performed in this State" is clearly erroneous and cannot stand.

## THIRD QUESTION TO BE DETERMINED:

*Was Perryman, under the facts disclosed, an employee of this employer within the definitions of our statute?*

This question is answered in the negative.

The place of employment under our statute is not expressly limited to Colorado, C.R.S. '53, 81-2-4, and in fact our laws and decisions recognize that there can be covered employment out-of-state, C.R.S. '53, 81-16-3. Also see *Howington v. Ind. Com.*, 133 Colo. 583, 298 P. (2d) 963. But to reap the benefits a person must in fact first be an employee under the statutory definition. The statute defining employee reads in part: "Every person in the service of any person, * * * private corporation * * *, under any contract of hire, express or implied, * * * but not including any persons who are expressly excluded from this chapter or whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer." C.R.S. '53, 81-2-7.

Clearly this wording has no application to Perryman for this employer never hired him, nor was the work by him on the contract in question done in Colorado, though it was in the usual course of employer's business. Claimant cites as supporting a contrary result the following cases on this point: *Flake Motors v. Huskins,* 128 Colo. 414, 262 P. (2d) 736; *Meyer v. Lakewood Country Club,* 122 Colo. 110, 220 P. (2d) 371; *Ind. Com. v. Santarelli,* 109 Colo. 84, 122 P. (2d) 239; and *Ind. Com. v. Bonfils,* 78 Colo. 306, 241 Pac. 735. These are all distinguishable from the instant case because in each of them the contracts were apparently entered into in Colorado and work was performed here by independent contractors or their employees. Also the other facts in those cases are not similar to those here presented.

Under the above facts it was erroneous for the referee, Commission and lower court to find that Perryman was employer's employee. He was an employee of Estlinbaum or a joint venturer with Estlinbaum or an independent contractor, and we have earlier herein stated that he did not come under the protection of C.R.S. '53, 81-9-1, relating to employees of independent contractors. The record is silent as to his relationship with Estlinbaum but since Estlinbaum sent him the first time and he expressly continued under the same arrangement, since some checks were made to Estlinbaum at Perryman's instruction and since he was driving on releases and money sent to Estlinbaum when he was killed outside Colorado, the available evidence indicates that if he was employed by anyone he was employed by Estlinbaum. Merely discussing and agreeing during his first trip to the same terms of expense reimbursement formerly arranged with Estlinbaum did not make Perryman an employee.

Under our statutes Estlinbaum was not employer's employee, nor was his son when he delivered trucks nor was Perryman. He was performing a service through or under Estlinbaum from his home base in Michigan

delivering .trucks not only to this employer but also in Oklahoma to persons not connected with the Colorado employer. As counsel for plaintiffs in error point out, if this particular fatal delivery had been commenced by one who had never been in Colorado, clearly it could not be contended that there was any contract of hire between this employer and such a stranger under these facts. Yet such a driver also would have been driving trucks owned in Colorado, licensed from Colorado and insured from Colorado.

It seems to us that if any compensation act is involved in this tragedy that it is for the proper authorities in Michigan to so determine under its statutes. See *Johnston v. Ind. Com.*, 352 Ill. 74, 185 N.E. 191.

In *U.S.F. & G. v. Ind. Com. and Lipe,* 99 Colo. 280, 61 P. (2d) 1033, three requirements are set forth, any two of which when met can qualify an employee, as the term is used in our statutes, as coming under the Colorado act. They are:

1. A contract of employment created in Colorado.

2. Employment in Colorado under a contract created outside the state.

3. Substantial employment in Colorado.

If any two of these conditions are met it makes no difference that the employee is not a resident of Colorado or is killed outside the state provided other statutory time limits on out-of-state employment are met.

■ In the instant case not one of the requirements has been met. There was no Colorado created employment contract, .no employment in Colorado under the Michigan created contract, and no substantial (or in fact any) employment in Colorado. There is thus no *res* to which the jurisdiction of the Colorado Statute or Commission could attach.

Cases cited on these points by the Commission and the claimant relating to "usual" employment, "regular business," "continuous contracts," and "work in the state" are not applicable here.

The judgment of the trial court is reversed and the cause remanded to the district court with directions to enter an order directing the Industrial Commission to dismiss the claim for lack of jurisdiction.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE KNAUSS and MR. JUSTICE DAY concur.