Opinion by JUDGE DUNN
¶ 1 Youngquist Brothers Oil & Gas, Inc., has no business operations in Colorado, but it recruits employees from Colorado to work on its North Dakota oil rigs. Within days of being hired, one of these Colorado recruits, Travis Miner, was injured in North Dakota while working on a Youngquist oil rig. Miner returned to Colorado and sought benefits under the Workers' Compensation Act of Colorado (Act), §§ 8-40-101 to 8-47-209, C.R.S. 2015.
¶ 2 The administrative law judge (ALJ) awarded Miner benefits, concluding he was hired in Colorado and suffered a compensable work-related injury. Because Youngquist did not carry Colorado workers' compensation insurance, the ALJ also imposed a fifty percent penalty against Youngquist. The Industrial Claim Appeals Panel (Panel) affirmed the ALJ's order.
¶ 3 Youngquist contends it is not subject to the Act and therefore the Panel's decision should be set aside. We disagree and affirm.
I. Background
¶ 4 Youngquist is an oil and gas company with operations in North Dakota. It hires workers nationally and internationally, but primarily from Texas, Oklahoma, Indiana, and Colorado. It maintains workers' compensation insurance in North Dakota, but not in Colorado.
¶ 5 Miner lived in Grand Junction, Colorado. After learning that Youngquist was looking for employees to work on its oil rigs in North Dakota, Miner submitted an online application. Later that day, a Youngquist representative called Miner and conducted a telephonic interview. Miner testified that at the conclusion of the interview, Youngquist offered him a job, which he accepted. Youngquist then arranged for Miner to fly to North Dakota the following day. A Youngquist representative met Miner at the airport and took him to get supplies before driving him to Youngquist's offices.
¶ 6 Once there, Miner completed new employee paperwork and passed a preliminary drug screen. He also provided a hair follicle for a drug test, the results of which were not immediately available. After completing the paperwork and the preliminary drug screen, Miner began his first evening rig shift.
¶ 7 During the following evening shift, Miner slipped and fell down the rig's stairs, hurting his back. Miner did not immediately report the injury to Youngquist because he did not "want to be that guy that got hurt the second day of work." Miner worked three more shifts and then reported his injury to his supervisor.
¶ 8 Youngquist agreed to allow Miner to seek medical treatment in Colorado and arranged for Miner to return to Colorado. Miner's treating physician concluded that although Miner had a preexisting back injury, the condition was worsened by his work-related fall.
¶ 9 Miner filed a workers' compensation claim with North Dakota Workforce Safety and Insurance. North Dakota denied his claim without a hearing, apparently due to Miner's pre-existing back condition.[1]
*1004 ¶ 10 Miner then filed a claim for workers' compensation benefits in Colorado. After a hearing, the ALJ determined that Miner was hired in Colorado and his claim was therefore subject to the Act. The ALJ further found Miner suffered a compensable work-related injury, awarded him benefits, and imposed a fifty percent penalty on Youngquist for failing to carry workers' compensation insurance in Colorado.
II. Jurisdiction
¶ 11 Youngquist contends it is not subject to the Act because (1) it does not conduct business in Colorado; (2) Miner was not hired in Colorado; and (3) it does not have sufficient contacts with Colorado to establish personal jurisdiction. We disagree.
A. The Extraterritorial Provision
¶ 12 Colorado has jurisdiction to award benefits for out-of-state work-related injuries if an employee was (1) hired or regularly employed in Colorado and (2) injured within six months of leaving Colorado. § 8-41-204, C.R.S. 2015; see also Hathaway Lighting, Inc. v. Indus. Claim Appeals Office, 143 P.3d 1187, 1189 (Colo. App. 2006) ( Section 8-41-204"addresses entitlement to compensation for injuries occurring outside Colorado.").
¶ 13 Youngquist argues that because it has no business operations in Colorado, the extraterritorial provision does not apply to it. But the extraterritorial provision does not require an employer hiring a Colorado employee to have other contacts with Colorado. § 8-41-204 ; see generally Hathaway Lighting, Inc., 143 P.3d at 1190. Nor is the provision limited to Colorado employers or employers who conduct business in Colorado. § 8-41-204. If an employer hires an employee in Colorado, that is enough. Id. ; see also State Comp. Ins. Fund v. Howington, 133 Colo. 583, 592-93, 298 P.2d 963, 968 (1956).
¶ 14 The power to extend protection to workers injured beyond its borders is rooted in Colorado's interest in the welfare and protection of its citizens and their dependents. Howington, 133 Colo. at 592-93, 298 P.2d at 968. Such power falls within Colorado's legitimate police powers. See id. ; see also Alaska Packers Ass'n v. Indus. Accident Comm'n, 294 U.S. 532, 542-43, 55 S.Ct. 518, 79 L.Ed. 1044 (1935) (upholding California's extraterritorial provision and recognizing California's "legitimate public interest in controlling and regulating" the employment relationship and "in providing a remedy available" in California).
¶ 15 In light of the strong policy interests underpinning extraterritorial workers' compensation provisions, Colorado is hardly alone in providing protection to employees hired in state and injured outside its borders. Indeed, most states have some form of extraterritorial workers' compensation provisions. See 1 Modern Workers Compensation § 104:16, Westlaw (database updated Nov. 2015) (collecting provisions and cases). Even North Dakota-where Youngquist operates-imposes extraterritorial jurisdiction in certain circumstances. See N.D. Cent.Code § 65-08-01 (2015).
¶ 16 We therefore are not persuaded by Youngquist's contention that it is not subject to the Act because-other than recruiting and hiring employees in Colorado-it conducts no business in this state. The extraterritorial provision means what it says. If an employer hires a Colorado employee in this state and the employee is injured within six months of leaving Colorado, the employer is subject to the Act.[2]
B. The Place of Hire
¶ 17 Because it is undisputed Miner was injured within six months of leaving Colorado, the extraterritorial provision applies if Miner was hired in Colorado.
*1005 Youngquist contends that Miner was hired in North Dakota and that the ALJ erred in finding Miner was hired in Colorado. We disagree.
¶ 18 Where a contract is made is generally determined by the parties' intent. See Denver Truck Exch. v. Perryman, 134 Colo. 586, 592, 307 P.2d 805, 810 (1957). "[I]t is considered to be the place where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed." Id. (citation omitted). As long as the fundamental elements of contract formation are present, however, an employment contract may be formed even though not every formality attending commercial contracts is observed. Aspen Highlands Skiing Corp. v. Apostolou, 866 P.2d 1384, 1387 (Colo. 1994) ; see generally 13 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 47.10 (2015) (discussing contract of hire principles in the context of workers' compensation acts).
¶ 19 The existence of a contract for hire is a question of fact to be determined by the fact finder. See Tuttle v. ANR Freight Sys., Inc., 797 P.2d 825, 827 (Colo. App. 1990) (it is for the jury to decide whether a contract exists). We uphold an ALJ's factual determination if it is supported by substantial record evidence. § 843-308, C.R.S. 2015; see also Rocky Mountain Dairy Prods. v. Pease, 161 Colo. 216, 222-23, 422 P.2d 630, 633 (1966) (industrial commission's determination that contract of hire was formed between employer and employee would not be set aside where "supported sufficiently by the record").
¶ 20 Specifically crediting Miner's testimony, the ALJ found that the last act necessary to complete Miner's hire occurred in Colorado when Youngquist telephonically offered Miner a job-and Miner accepted the job offer-while he was at home in Colorado. The ALJ also found that Youngquist's actions after the telephone call supported the finding that Miner was offered and accepted employment in Colorado. In particular, Youngquist arranged and paid for Miner's flight, met him at the airport, transported him to Youngquist's offices, and had him working on an oil rig shortly after completing paperwork and passing a preliminary drug screen.
¶ 21 To be sure, Youngquist presented testimony from which different inferences could be drawn. Specifically, Youngquist's office and safety manager testified that all offers of employment are conditional and only become permanent following successful completion of a drug test and a hair follicle test. But in weighing that testimony, the ALJ noted that the office and safety manager also testified that an employee would be removed from the jobsite and "terminated" if he failed to pass his drug screen. The ALJ found that such testimony implied that Miner "at that point" was "under a contract of hire." The ALJ therefore rejected the position advanced by Youngquist-that Miner was not yet hired when he arrived in North Dakota.
¶ 22 Youngquist disagrees with the ALJ's findings and asks this court to find that Miner was not hired until he completed paperwork and passed the drug test in North Dakota. To the extent Youngquist generally contends an employment contract cannot be formed until the completion of all employment-related paperwork or drug testing, we disagree. E.g., Shehane v. Station Casino, 27 Kan.App.2d 257, 3 P.3d 551, 555-56 (2000) (where employee accepted telephonic job offer while in Kansas, requirement that employee pass drug test before beginning out-of-state employment did not affect formation of the underlying contract); accord Potter v. Patterson UTI Drilling Co ., 148 N.M. 270, 234 P.3d 104, 108-10 (Ct. App. 2010) ; see also Murray v. Ahlstrom Indus. Holdings, Inc., 131 N.C.App. 294, 506 S.E.2d 724, 726-27 (1998) (rejecting argument that last act for employment contract occurred outside North Carolina where employee was offered and accepted employment by phone while in North Carolina but completed "requisite paperwork" in Mississippi).
¶ 23 As well, we decline Youngquist's invitation to reweigh the evidence. We, in fact, are not at liberty to do so. It was for the ALJ to weigh the testimony, assess credibility, and resolve any competing inferences or disputes in the evidence. See Metro Moving & Storage Co. v. Gussert, 914 P.2d 411, 415 (Colo. App. 1995). "If two *1006 equally plausible inferences may be drawn from the evidence, we may not substitute our judgment for that of the ALJ." Id.
¶ 24 Because substantial evidence supports the ALJ's finding that the "last act necessary" to form the employment relationship occurred in Colorado, we may not disturb that finding.
C. Minimum Contacts and Comity
¶ 25 Youngquist next advances two constitutional reasons why it should not be subject to the Act. First, it argues that it lacks sufficient minimum contacts to establish personal jurisdiction in Colorado. Second, it contends that enforcing the Colorado benefits award violates principles of comity because North Dakota denied Miner's workers' compensation claim. We reject the first argument and, because it is not developed, do not reach the second.
1. Minimum Contacts
¶ 26 Relying primarily upon non-workers' compensation cases, Youngquist argues that it does not have sufficient contacts with Colorado to subject it to jurisdiction here. Workers' compensation cases, however, are different. See Alaska Packers , 294 U.S. at 540-41, 55 S.Ct. 518. And such cases do not require the same extent of contacts as other types of cases, including tort cases. See id .
¶ 27 In Alaska Packers, a person living in California was hired in California to work in Alaska during salmon canning season. Id . at 538, 55 S.Ct. 518. He was injured in Alaska and returned to California, where he filed a workers' compensation claim and received benefits. Id . at 538-39, 55 S.Ct. 518. The employer appealed, asserting, among other arguments, a due process bar to the employee's claim. Id . at 539, 55 S.Ct. 518. The Supreme Court affirmed, rejecting the due process claim. Id . at 543, 55 S.Ct. 518.
¶ 28 The Supreme Court observed that the contacts might have been insufficient to support the exercise of jurisdiction over a tort claim, but it explained that the execution of the employment contract in the state, by a person living in the state, distinguished the case from a tort claim. Id . at 540-41, 55 S.Ct. 518 ("[W]here the contract is entered into within the state, even though it is to be performed elsewhere, its terms, its obligation, and its sanctions are subject, in some measure, to the legislative control of the state."). The Court concluded that objections to a state's exercise of jurisdiction in this circumstance must be directed "not to the existence of the power to impose liability for an injury outside state borders, but to the manner of its exercise as being so arbitrary or unreasonable as to amount to a denial of due process." Id. at 541-42, 55 S.Ct. 518. And the Court could not say that California's extraterritorial provision "lacks a rational basis or involved any arbitrary or unreasonable exercise of state power." Id. at 543, 55 S.Ct. 518.
¶ 29 Applying the Alaska Packers rationale, other courts have concluded that out-of-state employers may be subject to the workers' compensation laws of those states where they hire employees. See, e.g., Bowen v. Workers' Comp. Appeals Bd., 73 Cal.App.4th 15, 86 Cal.Rptr.2d 95, 105 (1999) (holding that California resident injured outside California while working for out-of-state employer was entitled to California workers' compensation benefits); Cavers v. Hous. McLane Co., 958 A.2d 905, 908 (Me. 2008) (out-of-state employer subject to Maine's workers' compensation jurisdiction where it entered into employment contract in Maine and employee was injured outside Maine); Rodwell v. Pro Football, Inc. , 45 Mich.App. 408, 206 N.W.2d 773, 780 (1973) (out-of-state employer subject to Michigan Workmen's Compensation Act where it hired a Michigan resident in Michigan and injury occurred out of state); Pierce v. Foley Bros. , 283 Minn. 360, 168 N.W.2d 346, 354 (1969) (stating that if Oklahoma employee who was injured in Montana was hired in Oklahoma by Montana employer, employer was subject to Oklahoma's workers' compensation act); Houle v. Stearns-Rogers Mfg. Co. , 279 Minn. 345, 157 N.W.2d 362, 365-67 (1968) (affirming Minnesota benefits award to a Minnesota employee injured in South Dakota while employed by a Colorado employer where employment contract was entered into in Minnesota).
¶ 30 No Colorado case has expressly applied the principles articulated in *1007 Alaska Packers to out-of-state employers hiring Colorado employees. The principles have been applied, however, to cases involving Colorado employees injured outside Colorado while working for a Colorado employer. Howington, 133 Colo. at 595-96, 298 P.2d at 970 (Colorado resident injured in Utah entitled to Colorado workers' compensation benefits); see also Moorhead Mach. & Boiler Co. v. Del Valle, 934 P.2d 861, 864 (Colo. App. 1996) (deciding that Colorado had jurisdiction over employee's workers' compensation claim where a Colorado union member was hired in Colorado but injured in Wyoming), abrogated on other grounds by Horodyskyj v. Karanian, 32 P.3d 470 (Colo. 2001).[3]
¶ 31 Because the Alaska Packers' jurisdictional analysis hinged on where the employment relationship was entered into and the state's legitimate interest in the protection of its residents, we see no principled reason why the rationale does not apply with equal force to any employer hiring employees in Colorado. And Youngquist points to no case concluding otherwise. Thus, if an employer hires an employee in Colorado and the employee is injured within six months of leaving Colorado, the employee may seek benefits under the Act.
¶ 32 For two reasons, we are not persuaded by Youngquist's assertion that Alaska Packers is factually distinguishable because "the injured worker [in Alaska Packers ] might have been 'remediless' " if the Supreme Court did not apply California's workers' compensation act and "[t]hat is not the situation here." First, it is the situation here. Miner's North Dakota workers' compensation claim was denied without a hearing. If Colorado were unable to exercise jurisdiction, Miner would be left with no remedy for his work-related injury, leaving the very real possibility that he "might become [a] public charge[ ]"-a matter of "grave public concern" to Colorado. Alaska Packers, 294 U.S. at 542, 55 S.Ct. 518. Second, even assuming Miner was not "remediless," the Supreme Court's jurisdictional analysis hinged on the location of the employment contract and a state's interest in protecting the contracting employee. See id. at 542-43, 55 S.Ct. 518. Both of these factors support Colorado's jurisdiction.[4]
¶ 33 Finally, to the extent Youngquist argues it was denied due process because it had no notice that it could be subject to the Act's extraterritorial provision, we do not agree. The Act's extraterritorial provision is unambiguous and is not limited to Colorado employers. And Alaska Packers was decided over seven decades ago. It provided Youngquist with notice that state courts can exercise jurisdiction over work-related injuries occurring outside the state's territorial boundaries where an employment contract was entered into in the state.
¶ 34 Accordingly, because Youngquist hired Miner in Colorado and Miner was injured within six months of leaving this state, Colorado had jurisdiction over Miner's workers' compensation claim.
2. Comity
¶ 35 Youngquist asserts that "dual jurisdiction" in Colorado is "patently unfair and constitutionally inappropriate" under principles of comity. Beyond this general assertion, however, Youngquist does not explain why principles of comity are violated, nor does it cite any relevant supporting legal authority. Because this argument is not sufficiently developed, we decline to address it. E.g. , Middlemist v. BDO Seidman, LLP , 958 P.2d 486, 495 (Colo. App. 1997) (failing to identify specific errors and provide supporting legal authority results in affirmance).
*1008 III. Penalty for Failure to Carry Colorado Insurance
¶ 36 Having rejected Youngquist's argument that it was not subject to the Act, we necessarily reject its argument that the ALJ erred in applying the Act's penalty provision.
¶ 37 Colorado imposes a fifty percent penalty on employers subject to the Act who fail to carry workers' compensation insurance. § 8-43-408(1), C.R.S. 2015; see also Kamp v. Disney, 110 Colo. 518, 522, 135 P.2d 1019, 1021 (1943). The penalty is mandatory, not discretionary. § 8-43-408(1) ; accord Eachus v. Cooper, 738 P.2d 383, 386 (Colo. App. 1986). Because Youngquist admittedly did not carry Colorado workers' compensation insurance, the ALJ was required to impose the fifty percent penalty. Eachus, 738 P.2d at 386 ("Courts have no discretion in imposing the penalty.").
IV. ALJ's Resolution of Evidentiary Conflicts
¶ 38 Last, Youngquist argues the ALJ failed to resolve conflicts in the evidence as required by section 8-43-301(8), C.R.S. 2015. We disagree.
¶ 39 An "ALJ is required to make specific findings only as to the evidence [the ALJ] found persuasive and determinative." Gen. Cable Co. v. Indus. Claim Appeals Office, 878 P.2d 118, 120-21 (Colo. App. 1994). An ALJ has no obligation to address every issue raised or any particular evidence which the ALJ finds unpersuasive. Id. Nor are we aware of any requirement that an ALJ must review and discuss the testimony of each and every testifying witness.
¶ 40 The ALJ found that Miner suffered a work-related injury. In so finding, the ALJ expressly credited Miner's testimony that he fell while working on the oil rig and suffered a back injury. The ALJ also credited Miner's doctor's testimony "as being persuasive on the issue of compensability." Based on the doctor's testimony, the ALJ found that the work-related fall aggravated Miner's underlying preexisting condition and was compensable under Colorado law.
¶ 41 The ALJ's findings, however, did not comment on the testimony of a Youngquist employee who stated that "there's typically a lot of people" on the rigs and it is unlikely that someone could have an accident without being observed. The employee admitted he was "not really" familiar with Miner, and he offered no direct testimony about Miner's accident or injury.
¶ 42 We perceive no error in the ALJ's findings. In crediting Miner's explanation of his fall and injury, the ALJ implicitly rejected the speculation that someone would have seen Miner's fall because "there's typically a lot of people" working on the rig. And the ALJ expressly stated that he "ha[d] not addressed every piece of evidence that might lead to a conflicting conclusion and ha[d] rejected evidence contrary" to the findings of fact. The ALJ therefore did consider and reject Youngquist's employee's testimony.
¶ 43 The ALJ properly weighed the evidence and provided sufficient and specific reasons for his finding that Miner suffered a compensable work-related injury. The decision is supported by substantial record evidence. Accordingly, we may not disturb the ALJ's finding.
V. Conclusion
¶ 44 The Panel's order is affirmed.
JUDGE RICHMAN and JUDGE BERGER concur.

Unlike Colorado, North Dakota does not consider injuries attributable to pre-existing conditions to be compensable "unless the employment substantially accelerates its progression or substantially worsens its severity." N.D. Cent. Code § 65-0102(10)(b)(7) (2015); compare id. (excluding "[i]njuries attributable to a preexisting ... condition"), with H & H Warehouse v. Vicory, 805 P.2d 1167, 1169 (Colo. App. 1990) (stating that a pre-existing medical condition does not preclude an employee from suffering a compensable injury under the Act).

At oral argument, Youngquist asserted that affirming the ALJ's decision subjects it to unbounded jurisdiction in every state when one of its out-of-state workers is injured in North Dakota. Not true. We offer no opinion on whether Youngquist is subject to jurisdiction in other states. And the Act's extraterritorial provision is not without bounds. It applies to employees hired in Colorado and injured within six months of leaving Colorado.

In Moorhead Machine & Boiler Co. v. Del Valle, the employer contacted the Denver union hall when it had job openings, and the union provided appropriately skilled employees. 934 P.2d 861, 862-63 (Colo. App. 1996), abrogated on other grounds by Horodyskyj v. Karanian, 32 P.3d 470 (Colo. 2001). The opinion does not say whether the employer was a Colorado employer or an out-of-state employer.

At oral argument, Youngquist repeatedly suggested that we should not follow Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935), because it was decided in 1935 and does not reflect modern employment realities. The age of the decision, however, does not impact its precedential vitality. And that a worker may be hired in one state to work in another state (and is then injured) is far from a dated employment practice.