## No. 21920.

ROCKY MOUNTAIN DAIRY PRODUCTS AND STATE COMPEN-
SATION INSURANCE FUND *v.* KENNETH L. PEASE, INDUSTRIAL
COMMISSION OF COLORADO, AND SHOENBERG FARMS, INC.
(422 P.2d 630)

Decided December 12, 1966.     Rehearing denied February 6, 1967.

ALIOUS ROCKETT, FRANCIS L. BURY, FEAY BURTON SMITH, JR., for plaintiffs in error.

RONALD I. ZALL, JON M. ZALL, for defendant in error Shoenberg Farms, Inc.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PETER L. DYE, for defendant in error Industrial Commission of Colorado.

CLARENCE W. BUTTON, for defendant in error Kenneth L. Pease.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

THIS dispute is occasioned by the decision of the Industrial Commission awarding to the claimant Kenneth L. Pease compensation for an injury sustained while ". . . the claimant was an employee of Rocky Mountain Dairy Products." Rocky Mountain Dairy Products and the State Compensation Insurance Fund (referred to herein as "Insurance Fund") challenge the propriety of the quoted finding, for, they say, no "contract of hire, express or implied" within the meaning of C.R.S. 1963, 81-2-6 and 81-2-7, can exist in the situation confronting us.

Shoenberg Farms, Inc. (referred to herein as "Shoenberg") and Rocky Mountain Dairy Products (referred to herein as "Rocky Mountain") are separate corpora-

tions owned, controlled and operated, in the main, by Edward P. Tepper and his son Jerry. Shoenberg is not an insured employer within the Workmen's Compensation Act, C.R.S. 1963, 81-2-6, due to its farming activities, whereas Rocky Mountain, being in large measure a distributor for Shoenberg products, is covered.

Pease was originally employed by Shoenberg through Jerry Tepper to work as a truck maintenance mechanic on the Shoenberg premises. One of Rocky Mountain's delivery trucks, called the "Dolly 5," operated directly out of Shoenberg Farms, and Pease occasionally would operate this truck when a regular driver was not available. He thus became familiar with one of Rocky Mountain's delivery routes while working full time as a mechanic for Shoenberg.

Pease testified that approximately six months after being employed by Shoenberg he was approached by Jerry Tepper and asked whether he would like to take on the operation of "Dolly 5." According to Pease, he had some reservations:

"And I says, 'You leave my wages the same, and everything,' I said, 'I'll be glad to.' But, I said, 'If I take the truck, can I go ahead and do the work on these other trucks and actually put two jobs into one and see if I can handle both jobs?' And Jerry told me, he says, 'Why sure,' he says, 'there is no reason at all why you can't handle both jobs if you want to.'

"So, he says, 'Why don't you go ahead,' he says, 'you can have the Dolly 5.' We always called it 'Dolly 5.' He says, 'You can have Dolly 5 permanent from now on.'"

Pease commenced operating "Dolly 5" and continued doing mechanical work after his route was serviced. While he served the needs of Rocky Mountain's customers, he turned his collections over to, and received his pay checks through, Shoenberg. After this arrangement had continued a short time, Pease, while loading his delivery truck, sustained the injury for which compensation is sought. A claim was filed with the Industrial

Commission against "Shoenberg Farms, Inc. (non-insured) and/or Rocky Mountain Dairy Products (insured)." The Commission ruled that Pease, at the time of his injury, was an employee of Rocky Mountain, dismissed the claim against Shoenberg and made an appropriate award.

The Commission's award was appealed to the district court by Rocky Mountain and the Insurance Fund on the theory that the Commission erred in finding Pease to be an "employee" of Rocky Mountain because, as a matter of law, no "contract of hire, express or implied" existed or could exist. The district court sustained the Commission and, in ruling that the award was supported by sufficient evidence, impliedly found the question of what constitutes an "employee" in the present context to be one of fact.

■ We hold that the Commission did not err in finding as fact Pease to be an "employee" of Rocky Mountain at the time of his injury within the meaning of that term as defined in the Workmen's Compensation Act and that the district court correctly sustained the award. *New Jersey Co. v. Patterson*, 86 Colo. 580, 284 Pac. 334. C.R.S. 1963, 81-2-7, in apposite part, reads as follows:

"Employee. — The term 'employee' shall mean and include:

\* \* \*

"(2) Every person in the service of any person, association of persons, firm, private corporation . . . , under any contract of hire, express or implied . . . but not including any persons who are expressly excluded from this chapter or whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer . . ."

With reference to the uncontroverted testimony present in this case, there is ample evidence to support a conclusion — whether one agrees with it or not — that either a "contract of hire" existed between Rocky Mountain and Pease, or that one did not exist. However, In-

surance Fund and Rocky Mountain would have us rule that, irrespective of the testimony, only the latter conclusion is permissible, and this as a matter of law and not as a question of fact.

Professor Larson in his treatise on Workmen's Compensation Law cautions against the technical application of the "contract of hire" requirement that Insurance Fund would have us adopt: to wit, that each and every formality attending commercial contractual arrangements be rigorously applied. He reminds us that the requirement was written into many states' Workmen's Compensation statutes for two reasons: first, the necessity for a "contract" was felt to insure that an employee did not give up legal rights against an employer without receiving value in return; and second, the contract had to be one "of hire" because, absent the expectation of remuneration at some rate, there was no way to compute benefits. After making these points Larson, in Volume I, § 47.10, page 689 of his work pens a caveat which warrants being set out:

"These, then, are the underlying reasons why compensation acts usually insist upon a contract of hire. They should be borne in mind during the consideration of particular applications of the contract requirement which follows, with a view to distinguishing legitimate use of the requirement from purely technical applications having nothing to do with the reason or spirit of the rule." See *Continental Oil Co. v. Sirhall*, 122 Colo. 332, 222 P.2d 612.

From the submitted briefs it would appear that both sides agree that no express contract of hire existed. We will accept the parties' assumption in this regard without passing upon it. Pease, Shoenberg, and the Industrial Commission argue that an implied contract of hire existed between Rocky Mountain and Pease. Rocky Mountain and the Insurance Fund reply that if an express contract of hire existed between Pease and Shoenberg it is a legal impossibility that an implied contract

could exist between Rocky Mountain and Pease because "no contract may be implied where an enforceable contract exists between the parties as to the same subject matter and a conflict would result." Plaintiffs-in-error's brief, quoting from 17 C.J.S. *Contracts* § 5.

■ There appears to us no logic in the position advanced that an express contract of hire rules out the possible existence of an implied contract of hire. Even as the above quoted text sets out the rule, this conclusion is inescapable. Were the parties and employment identical the proposition might possess some cogency, but that is not the case. Here one employer is said to be Shoenberg, the other Rocky Mountain; one employment is said to be as a mechanic, the other as a route driver. The only common denominator is the employee himself, and we perceive no reason why he could not have two separate contracts of hire — one express, the other implied — where, as here, there is no conflict of duties. We can, indeed envision a set of circumstances where both an express and implied "contract of hire" could exist between the same parties but covering different employment or covering the same employment but with differing parties. See, *e.g., New Jersey Co. v. Patterson, supra; Murphy Supply Co. v. Fredrickson,* 206 Wis. 210, 239 N.W. 420; *Naranja Rock Co. v. Dawal Farms,* 74 So.2d 282 (Fla. 1954).

■ The Colorado Workmen's Compensation Act apparently anticipates such results in two particulars. First, C.R.S. 1963, 81-2-6 and 81-2-7, speak of ". . . *any* contract of hire, express or implied," (emphasis supplied), indicating that several "contracts of hire" may exist in a given situation and recovery had upon "any." Second, C.R.S. 1963, 81-13-1, recognizes that two contracts of hire—express or implied—may simultaneously exist when employees are "lent." That section provides that when an employer loans an employee he remains liable for injuries to or death of that lent employee ". . . unless it shall appear from the evidence in said

case that said loaning constitutes a new contract of hire, express or implied, between the employee whose services were loaned and the person to whom he was loaned." Clearly, then, express and implied "contracts of hire" are not by necessity mutually exclusive within the statutory scheme.

The Insurance Fund and Rocky Mountain in support of their argument cite the 1889 case of *Robinson Consolidated Mining Co. v. Johnson,* 13 Colo. 258, 22 Pac. 459, which held that where an express contract for the sale of charcoal was pled, no recovery based on the same transaction upon a theory of implied contract could be had because "the defendant had a right to be advised by the pleadings in advance of the trial of the substantial terms and conditions of the contract under which its liability to a judgment was sought to be enforced." The case is authority only for code pleading practice and can in no way be looked to for support of the proposition that an express and implied "contract of hire" cannot co-exist between one employee and two separate employers under C.R.S. 1963, 81-2-6 and 81-2-7.

█ Other matters raised before this court resolve themselves into disputation over what the testimony before the Commission indicated. We refer, for instance, to the protestations of plaintiffs-in-error that: "Pease was never on the payroll of Rocky Mountain Dairy Products. He was hurt at the dock on the Shoenberg Farm, reported the accident at the Shoenberg Farm at the office of the Shoenberg Farm and not the Rocky Mountain Dairy Products office. He was paid by a check of Shoenberg Farms, Inc. At the end of each milk run he turned in the money he collected to the office of and on Shoenberg Farms." These undisputed facts, taken separately or collectively, are not dispositive of the issue and the Commission, as finder of fact, determined them not to control. Where inferences from the evidence are contradictory and a Commission decision is supported sufficiently by the record, this court will not gainsay

factual conclusions. *Industrial Commission v. Klaczkowski*, 146 Colo. 11, 360 P.2d 104.

Two minor matters remain for consideration. Rocky Mountain and the Insurance Fund contend that the form of the referee's order which was adopted by the Commission is deficient in, first, that no findings of evidentiary and ultimate fact were made in support of the order, and second, that it was error for the Commission in the order to refer to that section (C.R.S. 1963, 81-13-1) of the Workmen's Compensation Act dealing with "lent" employees. As to the first of these objections, it is clear that for the Commission to have found Pease to be an "employee" it must of necessity have found a "contract of hire, express or implied" to exist. A reading of the record makes it quite clear just what the Commission did and did not rely upon in disposing of the issue and, although more sparse than we would like to see, the findings are adequate in this circumstance. The reference to C.R.S. 1963, 81-13-1, can in no way be seen to have figured in the order other than being a gratuitous admonition to Shoenberg Farms that its non-insured status might be in at least partial jeopardy. As such it is mere precatory language.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE MCWILLIAMS concur.