**ASPEN HIGHLANDS SKIING CORPORATION and Colorado Compensation Insurance Authority, Petitioners,**

v.

**John J. APOSTOLOU, The Industrial Claim Appeals Office of the State of Colorado, and Director, Division of Labor, Respondents.**

No. 91CA1936.

Colorado Court of Appeals,
Div. III.

Dec. 31, 1992.

Rehearing Denied Jan. 28, 1993.

Certiorari Granted June 21, 1993.

Halaby, McCrea & Cross, Margaret D. Keck, Denver, for petitioners.

Ross P. Goldsmith, Denver, Jeremy M. Bernstein, Aspen, for respondent John J. Apostolou.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., James C. Klein, Asst. Atty. Gen., Denver, for respondents Indus. Claim Appeals Office and Director, Div. of Labor.

Opinion by Judge CRISWELL.

Petitioners, Aspen Highlands Skiing Corporation (the employer) and the Colorado

Compensation Insurance Authority, challenge a final order of the Industrial Claim Appeals Panel determining that John J. Apostolou (claimant) was an employee and, therefore, entitled to workers' compensation benefits. While we disagree with the rationale used by the Panel for its decision, we affirm its order based upon the record here.

Section 8–40–202(1)(b), C.R.S. (1992 Cum. Supp.) generally defines an "employee" for purposes of the Workers' Compensation Act as:

Every person in the service of any person ... under any contract of hire, express or implied....

Section 8–40–301(4), C.R.S. (1992 Cum. Supp.), on the other hand, excludes from this general definition any:

person who *volunteers* time or services as a ski patrol person ... for a passenger tramway operator.... (emphasis supplied)

The Act does not define the term, "volunteers," however.

Claimant was admittedly employed on a part-time basis as a ski instructor by the employer, which operates a passenger tramway in conjunction with its operation of a skiing facility. As compensation for his services as an instructor, claimant received both a salary and a personal ski pass, allowing him to ski free so long as he worked for the employer.

The employer utilized two groups of individuals to act as members of its ski patrol, which it classified as "professionals" and "volunteers." The "professional" ski patrol were full-time, salaried employees, while the "volunteer" members normally received only a ski pass similar to the pass provided to claimant as a part of his compensation as a ski instructor.

In January 1990, an agent of the employer made known to all of its ski instructors of the need for persons with CPR qualifications and first aid training to work as members of the volunteer ski patrol. When claimant disclosed that he possessed such qualifications, he was directed to speak with the ski patrol director.

In claimant's discussions with the ski patrol director, he eventually agreed to serve as a member of the patrol. However, because he already possessed a season's ski pass, he negotiated with the director to provide, in return for his services on the ski patrol, daily passes for him or his designee. While the evidence was in some dispute upon the subject, the Administrative Law Judge (ALJ) found that the agreement was that claimant or his designee was to be provided with unlimited daily passes. The ALJ also found that claimant's girlfriend actually used the passes on seven to ten occasions during the 1990 ski season.

In February 1990, claimant injured his knee while performing services for the employer as a ski patrolman. Based upon the value of the daily passes for which claimant had bargained and the number of hours claimant worked as a member of the ski patrol, the ALJ determined that claimant's financial return for such services was approximately $4.50 per hour. Because of his injury, however, he was unable to continue his work as a ski instructor, and in addition, he was temporarily disabled from working at his other part-time employment.

The ALJ, relying upon the specific facts disclosed by the record, held that claimant was not a "volunteer" under § 8–40–301(4), because he had been solicited to work as a ski patrolman by the employer, he had negotiated with the employer to provide a special benefit to him, and but for such special benefit (which possessed substantial monetary value), claimant would not have agreed to perform services as a "volunteer." Hence, the ALJ found that claimant fell within the Act's general definition of "employee" and granted benefits to him based upon the compensation he received from his concurrent employment as a part-time ski instructor and other part-time employment.

The Panel in its review and affirmance of the ALJ's determination held that a person cannot be a "volunteer" under § 8–40–301(4) unless the person serves "with *no* expectation other than the enjoyment of serving," as contrasted with "those who act as patrol members with the expectation

of *some type* of remuneration." (emphasis supplied) Under this interpretation of the statute, therefore, if a member of a ski patrol receives a ski pass and it has some value, that member would not be a "volunteer."

The employer, on the other hand, asserts that it is common practice for ski slope operators to provide ski passes to its volunteer ski patrol members and that the General Assembly adopted the statutory exclusion with knowledge of this practice. However, this record contains no evidence of any such general practice, and the portion of the legislative history referred to by the employer does not support its assertion that § 8–40–301(4) was adopted with knowledge of that practice.

Further, considering the specific factual record presented here, we find it unnecessary to adopt any all-encompassing definition of the term "volunteers," as that term is used in § 8–40–301(4).

■ In determining whether a "contract of hire" exists under § 8–40–202(1)(b), the contract need not be express, and technical requirements for a "contract" need not be observed; an agreement by the employee to perform services for another is sufficient. *Rocky Mountain Dairy Products v. Pease,* 161 Colo. 216, 422 P.2d 630 (1966).

■ Moreover, there is no requirement that the employee receive some amount of money in return for the services rendered by that employee. The compensation may take other forms. *See generally* 1B A. Larson, *Workmen's Compensation Law* § 47.43(a) (1992).

■ Nevertheless, the services must be rendered with the expectation of some type of compensation. Thus, if the services are volunteered without any expectation of compensation in return, the fact that the alleged employer may provide some benefit on a gratuitous basis will not convert a volunteer into an employee. *See Hall v. State Compensation Insurance Fund,* 154 Colo. 47, 387 P.2d 899 (1963) (member of organization donating services to hospital is not an employee simply because she received free lunch at hospital).

■ We cannot say, therefore, that, simply because a passenger tramway operator provides a ski patrol member with a free skiing pass, that fact alone, without consideration of the particular circumstances involved, removes the ski patrol member from the category of a "volunteer" under § 8–40–301(4). And, to the extent that the Panel relied upon such a premise, we reject its analysis.

On the other hand, we likewise cannot say, as a matter of law, that a member of a ski patrol is a "volunteer" if, as here, the member specifically agrees to perform services only in return for the receipt of a special benefit having substantial value, which is not provided to other volunteers, and refuses to perform such services except in accordance with that special contract.

■ In short, even though the status of "volunteer" under the statute might not be jeopardized solely by the operator's furnishing of a ski pass to the patrol member, the evidence here supports the ALJ's determination that claimant was not a volunteer, but that he rendered his services pursuant to an express contract of hire with an expectation of compensation.

Here, the employer first contacted claimant because he was an admitted employee who possessed qualifications needed by it. He was directed to speak with another supervisor, and he agreed to act as a member of the patrol only after negotiating with this supervisor to receive a special benefit. The evidence supports the ALJ's finding that, without such consideration, claimant would have refused to render any services as a patrol member.

■ We also reject the employer's assertion that, because a ski pass for use by another person is not one of the benefits which constitutes "wages" under § 8–40–201(19), C.R.S. (1992 Cum.Supp.), claimant must be considered to be a volunteer, rather than an employee.

The definition of employee does not require the receipt of "wages." *See* § 8–40–202(1)(b). The contract of hire may call for

compensation in another form. *See* 1B A. Larson, *supra.*

■ Rather, the term "wages," as defined in § 8-40-201(19), is to be used only in calculating a claimant's "average weekly wage," as that term is used in § 8-42-102, C.R.S. (1992 Cum.Supp.), to determine the amount of benefits to which an injured employee is entitled. While the value of benefits not described in § 8-40-201(19) may not be included in determining the level of benefits, the lack of any "wages" as defined by this latter statute does not mean that there exists no "contract of hire" under § 8-40-202(1)(b).

Order affirmed.

SMITH, J., concurs.

ROTHENBERG, J., dissents.

Judge ROTHENBERG dissenting.

The question here is whether this claimant's act of negotiating to obtain free ski passes for his girlfriend in exchange for his services doing ski patrol work created an employment relationship entitling him to compensation for his injuries. Because I conclude that, despite such negotiation, claimant was a "volunteer" and not an "employee" under the Workers' Compensation Act, I respectfully dissent.

An "employee" means every person "under any contract of hire, express or implied. . . ." Section 8-40-202(1)(b), C.R.S. (1992 Cum.Supp.). Section 8-40-301(4), C.R.S. (1992 Cum.Supp.) provides that the term "employee" *excludes* any person who volunteers time or services as a ski patrol person.

Although the term, "wages," does not appear in the same sections in which employee is defined, nevertheless, when the Workers' Compensation Act is read as a whole, it can be seen that wages are an integral part of the Act and the employment relationship. For example, an "employee" is one who is under a "contract of hire," § 8-40-202(1)(b), and wages are the compensation under that "contract of hire." Section 8-40-201(19), C.R.S. (1992 Cum.Supp.).

As defined in the Act, "wages" is "the money rate at which services rendered are recompensed under the contract of hire," and includes certain fringe benefits such as room and board, insurance, and tips. Section 8-40-201(19), C.R.S. (1992 Cum.Supp.). Importantly, the statute defining wages specifically excludes any fringe benefit not enumerated.

The term "volunteer" is not defined in the Workers' Compensation Act. However, the common definition of volunteer is "a person who gives his [or her] services without any express or implied promise of remuneration." *Black's Law Dictionary* 1413 (5th ed. 1979). "Wages" falls within the ordinary definition of "remuneration." *See Black's Law Dictionary* 1165 (5th ed. 1979) (remuneration is "reward; recompense; salary; compensation").

Given these definitions and the limitations contained within them, I submit that an appropriate and uniform test for differentiating between volunteers and employees is the receipt of wages, as defined by § 8-40-201(19), and I would adopt such a test. *See Camphill Village, U.S.A. v. Workmen's Compensation Board,* 23 N.Y.2d 202, 243 N.E.2d 739, 742, 296 N.Y.S.2d 129, 132 (1968) (persons who lived in and supervised family-type establishments for handicapped persons, and who received no compensation except full subsistence for their households, were not employees for purposes of workers' compensation, but were volunteers; receipt of wages is the distinguishing factor). *Cf.* 1B Larson, *Workmen's Compensation Law* § 47.43(a) (1992) (gratuities and discounts, unless understood by the parties to constitute the equivalent of wages, are not considered remuneration under a contract of hire). *See also Mesa County Valley School District No. 51 v. Goletz,* 821 P.2d 785 (Colo.1991) (volunteer assistant pitching coach not an "appointed employee" under Workers' Compensation Act); *Hall v. State Compensation Insurance Fund,* 154 Colo. 47, 387 P.2d 899, 901-902 (1963) (claimant who volunteered services at hospital but received a meal free each day she worked was not "employee" of hospital

within Workers' Compensation Act; liberal construction of the Workers' Compensation Act cannot be expanded beyond the plain, clear and explicit language of the Act).

Applying such a test to the circumstances here, I conclude that this claimant is not eligible for benefits because he did not receive "wages."

The record reflects that in Colorado volunteer ski patrol members commonly receive free passes for themselves. A free pass is an unenumerated fringe benefit and, as such, is excluded from the definition of wages. *See* § 8–40–201(19), C.R.S.

Here, because claimant already had his own free ski pass because of his part-time employment as a ski instructor, he negotiated to receive the free pass for his girlfriend instead of for himself. Nevertheless, claimant received the equivalent of that which was received by all other volunteer ski patrol members: one free ski pass. Since he received an unenumerated fringe benefit excluded from the definition of "wages," I would conclude that he remained a volunteer and was not transformed into an employee under the Workers' Compensation Act.

In summary, I would hold that a member of the ski patrol who receives an unenumerated fringe benefit such as a gratuitous ski pass for patrol services is a volunteer and exempt from coverage under the Workers' Compensation Act, even though the gratuitous ski pass may be used by someone other than the volunteer ski patrol member. I would therefore set aside the order of the Panel and remand the cause with directions to instruct the ALJ to deny claimant benefits.