**MOORHEAD MACHINERY & BOILER COMPANY and Twin City Fire Insurance Company, Petitioners,**

v.

**Daniel DEL VALLE and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 95CA2135.

Colorado Court of Appeals,
Div. IV.

Sept. 5, 1996.

Rehearing Denied Oct. 10, 1996.

Certiorari Denied April 14, 1997.

White and Steele, P.C., John M. Lebsack, Ted A. Krumreich, Denver, for Petitioners.

Steven U. Mullins, P.C., James A. May, Pueblo, for Respondent Daniel Del Valle.

No appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge BRIGGS.

Petitioners, Moorhead Machinery & Boiler Company (employer), and its insurer, Twin City Fire Insurance Company, seek review of a final order of the Industrial Claim Appeals Office (Panel) determining that Colorado had jurisdiction over this workers' compensation proceeding and that Daniel Del Valle (claimant) sustained a compensable mental impairment. We affirm.

Claimant was a member of the boiler makers' union. Although no master contract was introduced into evidence, the union apparently had an agreement with various contractors, including the employer, to obtain needed workers on terms already agreed through the union hiring hall in Denver. The employer's field superintendent testified it was the employer's normal practice to inform the union representative in Denver of a job opening and the skills required. The union would

then contact the next out-of-work union member on its list who had the requisite skills. If the job were accepted, the worker would travel to the job site at the time specified. Claimant similarly testified that he regularly received work by being contacted by the union at his home in Pueblo and instructed where and when to report to work.

In May 1993, the employer contacted the union seeking boilermakers for a job in Wyoming. Claimant was contacted by the union and agreed to report to the Wyoming job site at the specified time.

Upon arriving at the job site, claimant was required to provide his medical history on a personal safety questionnaire. The questionnaire provided that, by appearing on the job site, claimant accepted a conditional offer of employment made to him by the employer through the union. It further provided the job offer was "contingent upon the satisfactory result of the medical inquiry."

The employer's field superintendent testified that, when claimant reported to the job site, he still could have rejected the job. Likewise, the employer could have rejected claimant for health reasons or incompetency. However, the last time the field superintendent could recall rejecting a union member who had reported to the job site was two years before. That worker was rejected only because he had previously provided false information on the personal safety questionnaire.

Claimant was deemed qualified and began work. The following month, he was involved in an altercation with a co-worker who had harassed him in the past and had again harassed him during a lunch break. Claimant left the lunch area and "blacked out" as he was proceeding to his work station. The employer's foreman observed that claimant appeared to be upset, shaking, and nervous after the incident.

Claimant was laid off work for reasons unrelated to the altercation. He returned to Colorado.

Several months after his return, claimant was treated by a psychiatrist and hospitalized for two weeks. His psychiatrist opined that claimant suffers from profound depression resulting from the work-related harassment.

Claimant filed a workers' compensation claim in Colorado for mental impairment. The Administrative Law Judge (ALJ) concluded that Colorado had jurisdiction over the claim and awarded medical and temporary total disability benefits. The Panel affirmed.

## I.

■ Petitioners contend that jurisdiction over this claim is not proper in Colorado because the contract of hire took place in Wyoming. They argue that the last act necessary to a meeting of the minds did not occur until claimant appeared in Wyoming, completed the personal safety questionnaire, and passed the interview. We conclude that Colorado has jurisdiction over the claim.

In Colorado, workers' compensation benefits are awarded if "an employee who has been hired or is regularly employed in this state receives personal injuries in an accident or occupational disease arising out of and in the course of such employment outside of this state," and the injury occurs within six months after leaving the state. Section 8–41–204, C.R.S. (1996 Cum.Supp.).

Claimant does not assert that he was "regularly employed" in Colorado for purposes of § 8–41–204. Thus, the issue presented is whether he may be deemed to have been hired in Colorado.

■ Colorado's statutes extending workers' compensation benefits in certain situations to workers who have been injured in another state were adopted in 1941. The statutory scheme included the provision here in question, which provides protection for the employee sent out of state for temporary or occasional work. Colorado has the power to extend the protection of its Workers' Compensation Act (Act) to citizens injured while performing such services because of its interest in the welfare and protection of its citizens and their dependents. *See State Compensation Insurance Fund v. Howington*, 133 Colo. 583, 298 P.2d 963 (1956).

Our supreme court, like the courts in other states with similar statutes, has looked to the place where the contract is deemed to have been made to determine whether a worker may be considered to have been hired in this state. In *Denver Truck Exchange v. Perryman*, 134 Colo. 586, 307 P.2d 805 (1957), the court noted that the place of contracting is generally determined by the parties' intentions, and as a rule, it is where the offer is accepted, or where the last act necessary to a meeting of the minds or to complete the contract is performed.

■■■ However, the determination of when and where a contract is formed requires consideration of the purpose for the determination. When that purpose is determining the application of workers' compensation law, a technical application of the "contract of hire" requirement is not appropriate. Hence, the general rule announced in *Denver Truck Exchange* has been tempered so that a contract of hire may be deemed formed, even though not every formality attending commercial contractual arrangements is observed, as long as the fundamental elements of contract formation are present. *Aspen Highlands Skiing Corp. v. Apostolou*, 866 P.2d 1384 (Colo.1994); *Rocky Mountain Dairy Products v. Pease*, 161 Colo. 216, 422 P.2d 630 (1966); *see also* 1A A. Larson, *Workmen's Compensation Law* § 26.22 at 5–325 (1995)(it is necessary "[to subordinate] contract law technicalities to the reality of the [employment] relationship existing from the time the claimant [began] his journey toward the job pursuant to the overall-contract governing the way hiring is done in this particular employment").

Here, the employer regularly used the union in Denver to offer employment to Colorado workers. The terms and conditions of a job were known at the time the offer was communicated to a worker. While the worker could reject the offer when the union called, if not rejected, the worker expected, and the regular practice was, to travel to the job site and begin work at the already agreed wages and hours.

Likewise, the employer did not know which particular worker would arrive and retained the right not to provide a job to a worker lacking the requisite health or skill. However, once the union was contacted, the employer's expectation, and the regular practice, was that a worker with the required health and skills would arrive for work at the specified time and location.

In these circumstances, at least by the time the claimant had agreed to report and departed from his home for the job site, the fundamental elements of the contract were present. The Panel therefore did not err in concluding that Colorado has jurisdiction over the claim. *See Reynolds Electrical & Engineering Co. v. Workmen's Compensation Appeals Board*, 65 Cal.2d 429, 55 Cal. Rptr. 248, 421 P.2d 96 (1966)(the union was the agent of the employer for the purpose of transmitting the offers of employment to its members and the injured worker accepted the offer when he received the dispatch slip and departed for the job site); *Mattel v. Pittman Construction Co.*, 248 La. 540, 180 So.2d 696 (1965)(when the workers ordered by the employer were offered jobs by the union and they agreed to go to the job site, the workers were then "hired"); *Houle v. Stearns–Rogers Manufacturing Co.*, 279 Minn. 345, 157 N.W.2d 362 (1968)(possibility that employer will reject the worker for cause when he arrives at the job site does not prevent a contract of hire from coming into existence at the time of the worker's departure for the job); *Rivera v. Green Giant Co.*, 93 N.J.Super. 6, 224 A.2d 505 (App.Div. 1966)(even though medical examination was performed at the job site in Delaware, jurisdiction was proper in New Jersey, where contract of hire occurred); *Bowers v. American Bridge Co.*, 43 N.J.Super. 48, 127 A.2d 580 (App.Div.1956)(fact that incidental administrative details were performed at the job site in Pennsylvania after contract of hire took place at New Jersey union hiring hall did not divest New Jersey of jurisdiction); *cf. Aspen Highlands Skiing Corp. v. Apostolou, supra; Rocky Mountain Dairy Products v. Pease, supra; see generally* 4 A. Larson, *Workmen's Compensation Law, supra,* § 87.32(b) at 16–117 ("if in the great majority of instances the man sent by the hiring hall was engaged as a matter of routine, the result would not be changed by the circum-

stance that the employer retained the legal right to reject him"). *But see Posey v. Industrial Commission,* 87 Ariz. 245, 350 P.2d 659 (1960).

## II.

 Petitioners' next contention is that the Panel erred in affirming the ALJ's determination that the claim for mental impairment arose out of claimant's employment. They argue that because the dispute between claimant and his co-worker was not work-related, it was not compensable. Again, we disagree.

To obtain compensation for an injury, the employee must be performing service arising out of and in the course of the employee's employment. Section 8–41–301(1)(b), C.R.S. (1996 Cum.Supp.); *Triad Painting Co. v. Blair,* 812 P.2d 638 (Colo.1991). And, when mental impairment is the basis of the claim, the impairment must have arisen primarily from the claimant's then occupation and place of employment. Section 8–41–301(2)(b), C.R.S. (1996 Cum.Supp.); *City of Thornton v. Replogle,* 888 P.2d 782 (Colo. 1995).

Whether an injury arises out of employment is a question of fact. It is resolved by examining the totality of the circumstances. *Triad Painting Co. v. Blair, supra; Lori's Family Dining, Inc. v. Industrial Claim Appeals Office,* 907 P.2d 715 (Colo. App.1995).

A claim for compensation for mental impairment resulting from harassment by a co-worker may be compensable, even if the dispute does not center upon work-related issues, if the work brought the employees together and created the relation and conditions resulting in the dispute. *See Rendon v. United Airlines,* 881 P.2d 482 (Colo.App. 1994); *see also In re Question Submitted by U.S. Court of Appeals,* 759 P.2d 17 (Colo. 1988); *Banks v. Industrial Claim Appeals Office,* 794 P.2d 1062 (Colo.App.1990).

Here, claimant's testimony indicated that the verbal harassment by the co-worker occurred only at work. It was not related to any private dispute that arose outside of work and was brought to the job site by the parties. Hence, the record contains sufficient evidence to support the ALJ's determination that the mental impairment arose out of claimant's employment. We must therefore uphold the order. *See* § 8–43–308, C.R.S. (1996 Cum.Supp.); *Rendon v. United Airlines, supra.*

Order affirmed.

DAVIDSON and TAUBMAN, JJ., concur.